IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ANDERSON SHUMAKER COMPANY, | ) | Case No. 17-05206-DRC |
| | ) | |
| | ) | Hon. Donald R. Cassling |
| | ) | |
| Debtor. | ) | |

**NINTH INTERIM ORDER AUTHORIZING DEBTOR TO USE
PREPETITION COLLATERAL, INCLUDING CASH COLLATERAL, AND
GRANTING ADEQUATE PROTECTION PURSUANT TO
11 U.S.C. §§ 361 AND 363 AND SCHEDULING A FINAL HEARING**

This matter comes before the Court upon the motion (the "Motion")[1] of the above-captioned debtor and debtor-in-possession (the "Debtor"), pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), for the entry of an order (the "Ninth Interim Order") authorizing Debtor to use cash collateral of Associated Bank, N.A. ("Associated Bank") and Forest Park National Bank & Trust Co. ("Forest Park" and together with Associated Bank, the "Lenders") and providing adequate protection to Associated Bank; the Court having determined that the relief requested in the Motion, as modified herein, is in the best interests of Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that notice of the Motion and the interim hearings on the Motion were sufficient and adequate under the particular circumstances; and upon the record in this case; and after due deliberation thereon and good and sufficient cause appearing therefore;

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**DEBTOR AND ASSOCIATED BANK REPRESENT TO THE COURT AS FOLLOWS:**

1. *Prepetition Loans and Liens.* Debtor and Associated Bank stipulate as follows:

(a) Prior to the Petition Date, Debtor and Associated Bank entered into that certain Loan and Security Agreement dated October 28, 2010 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"). Pursuant to the terms of the Loan Agreement, Associated Bank made loans and other financial accommodations to Debtor as evidenced by that certain: (i) Twelfth Amended and Restated Revolving Note issued by Debtor to Associated Bank in the principal amount of $3,000,000 effective as of August 30, 2016 (as amended, restated and modified from time to time and together with any renewals or extensions thereof or exchanges or substitutions therefor, the "Revolving Note"); (ii) the Original Term Note issued by Debtor to Associated Bank in the principal amount of $4,484,000.00 effective as of October 28, 2010 (as amended, restated and modified from time to time and together with any renewals or extensions thereof or exchanges or substitutions therefor, the "Original Term Note"); (iii) the 2014 Term Note A issued by Debtor to Associated Bank in the principal amount of $500,000.00 effective as of June 2, 2014 (as amended, restated and modified from time to time and together with any renewals or extensions thereof or exchanges or substitutions therefor, the "Term Note A"); (iv) the Fourth Amended and Restated 2014 Term Note B issued by Debtor to Associated Bank in the principal amount of $400,000.00 effective as of February 28, 2016 (as amended, restated and modified from time to time and together with any renewals or extensions thereof or exchanges or substitutions therefor, the "Term Note B," and collectively with the Revolving Note, the Original Term Note, and Term Note A, the "Notes").

2

(b)     Prior to the Petition Date, Debtor, Associated Bank and the Illinois Finance Authority ("IFA") entered into that certain Bond and Loan Agreement dated as of March 1, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Bond and Loan Agreement"), and Debtor and Associated Bank entered into that certain Loan and Security Agreement dated March 26, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "IRB Loan Agreement"), pursuant to which Associated Bank made a loan to Debtor in the principal amount of $10,000,000.00 to enable Debtor to secure a $10,000,000.00 Industrial Revenue Bond (the "IRB Loan"). On March 26, 2009, the IFA issued that certain Industrial Development Revenue Bond (the "Bond") to Associated Bank in the principal amount of $10,000,000.00.

(c)     Borrower and Associated Bank entered into that certain Mortgage, Security Agreement with Assignment of Rents and Fixture Filing dated as of March 26, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Mortgage") whereby the Borrower granted Associated Bank a security interest in certain collateral, more fully described in the Mortgage, including but not limited to, certain real property located at 824 South Central Avenue, Chicago, Illinois 60644 the ("Mortgaged Premises"). Borrower and Associated Bank also entered into that certain Assignment of Leases and Rents dated as of March 26, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "AOR") whereby the Borrower granted Associated Bank a security interest in certain collateral, more fully described in the AOR, including but not limited to, rents from the Mortgage Premises.

(d)     Borrower also executed (i) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 5405026 on the life of Richard J. Tribble dated as of

April 30, 2014 in favor of Associated Bank, (ii) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 4969506 on the life of Richard J. Tribble dated as of May 30, 2014 in favor of Associated Bank, (iii) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 4969507 on the life of James R. Tribble dated as of May 30, 2014 in favor of Associated Bank, (iv) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 3804589 A on the life of James R. Tribble dated as of May 30, 2014 in favor of Associated Bank, (v) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 3365954 on the life of Richard J. Tribble dated as of May 30, 2014 in favor of Associated Bank, (vi) that certain Collateral Assignment of Life Insurance Policy regarding Policy Nos. 1569621 and 1605541 on the life of Donald A. Sutrina dated as of May 30, 2014 in favor of Associated Bank, (vii) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 3243453 on the life of Richard J. Tribble dated as of May 30, 2014 in favor of Associated Bank, (viii) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 3290809 on the life of Peter Jaworowski dated as of May 30, 2014 in favor of Associated Bank, and (ix) that certain Assignment of Life Insurance Policy as Collateral regarding Policy No. 3292761 on the life of William Klaczynski dated as of May 30, 2014 in favor of Associated Bank (collectively, the "Insurance Assignments").

(e)     Associated Bank and Forest Park are parties to a Term Loan Participation Agreement and a Revolving Note Participation Agreement, each dated October 28, 2010.

(f)     As of the Petition Date, Debtor was indebted and liable to Associated Bank under the Bond and Loan Agreement, IRB Loan Agreement, Loan Agreement, Mortgage, AOR, Insurance Assignments, the Notes, and all documents, instruments, and agreements related to or entered into in connection with the foregoing (collectively, the "Prepetition Loan

Documents") in the aggregate principal amount of at least $11,086,102.51, plus interest, fees, costs, expenses (including attorneys' fees), and other amounts that Debtor is obligated to pay Associated Bank under the Prepetition Loan Documents (the "Prepetition Loan Debt").

(g)     The Prepetition Loan Debt is (A) legal, valid, binding, and enforceable against Debtor and (B) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise.

(h)     As security for the payment of the Prepetition Loan Debt, Debtor granted Associated Bank security interests in and liens upon, or assigned to Associated Bank, as the case may be: (i) the Mortgaged Premises, (ii) the collateral described in Granting Clauses I, II, III, IV, V, VI and VII of the Mortgage, (iii) the Collateral (as defined in the IRB Loan Agreement), (iv) the Collateral (as defined in the Loan Agreement), (v) the collateral described in the AOR, (vi) the insurance policies described in the Insurance Assignments, and (vi) all or substantially all of Debtor's tangible and intangible personal property and assets, wherever located and whether then owned or thereafter arising or acquired by Debtor, including, without limitation, all of Debtor's accounts, inventory, equipment, software, books and records, securities, chattel paper, deposit accounts, documents, financial assets, general intangibles, goods, instruments, intellectual property, investment property, letter-of-credit rights and commercial tort claims, all as more fully described in the Prepetition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all proceeds thereof, including, without limitation, the Cash Collateral (as defined below), being referred to herein as, the "Prepetition Collateral"

5

and such liens and assignments thereon shall be referred to as, the "Prepetition Liens"), pursuant to, among other things, the Prepetition Loan Documents.

(i) The Prepetition Liens are legal, valid, enforceable, non-avoidable, and duly and properly perfected security interests in and liens upon the Prepetition Collateral and, as of the Petition Date and without giving effect to this Ninth Interim Order. Debtor is not aware of any liens or security interests having priority over the Prepetition Liens, except certain "Permitted Exceptions" (as defined in the Mortgage).

(j) The Prepetition Liens on the Prepetition Collateral were granted to Associated Bank for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

(k) The ability of the Debtor to finance its operations and complete a successful chapter 11 reorganization requires immediate and continued use of Cash Collateral. In the absence of the use of Cash Collateral, the continued operation of the Debtor's business would not be possible and immediate and irreparable harm to the Debtor, its estate, and its creditors would occur. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or to maintain its property without the use of Cash Collateral. The relief requested in the Motion is therefore necessary for the continued operation of the Debtor's business and the preservation of its property. Associated Bank and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's consensual use of Cash Collateral to fund the continued operation of the Debtor's business during the Specified Period (as defined below) in accordance with the Budget (as defined below). Entry of this Ninth Interim Order is in the best interests of the Debtor, its estate, and its creditors.

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED THAT:**

1. *Petition Date.* On February 23, 2017 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois (this "Case"). Debtor has retained possession of its property and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. *Jurisdiction.* This Court has core jurisdiction over this Case, the Motion, and the parties and property affected by this Ninth Interim Order[2] pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. *Motion and Objections.* The Motion is granted on a ninth interim basis and the Debtor's use of Cash Collateral on an interim basis is authorized, subject to the express terms and condition of this Ninth Interim Order. All objections to the entry of this Ninth Interim Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4. *Cash Collateral.*

   (a) All cash, cash proceeds, and all other cash collateral of Debtor wherever located and whether constituting original collateral or proceeds of the Prepetition Collateral, are encumbered by the Prepetition Liens and constitute "cash collateral" of Associated Bank (as such term is defined in section 363(a) of the Bankruptcy Code) (all such cash, cash proceeds, and other "cash collateral", the "Cash Collateral" and together with the Prepetition Collateral, the

---

[2] On March 1, 2017, the Court entered its Interim Order Authorizing Debtor to Use Prepetition Collateral, Including Cash Collateral, and Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363 and Scheduling a Final Hearing. On March 24, 2017, April 25, 2017, June 6, 2017, June 30, 2017, August 24, 2017, September 25, 2017, and November 8, 2017, the Court entered its Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Interim Orders Authorizing Debtor to Use Prepetition Collateral, Including Cash Collateral, and Granting Adequate Protection Pursuant to 11 U.S.C. §§361 and 363 and Scheduling a Final Hearing.

"Collateral"). Without limiting the generality of the foregoing, the Cash Collateral shall include all of the cash proceeds of the Prepetition Collateral in which Lender has an interest, whether such interest existed as of the Petition Date or arises pursuant to this Ninth Interim Order, any other order of the Court, applicable law, or otherwise; provided, however, that Lender expressly agrees and acknowledges that, notwithstanding anything in this order to the contrary: (i) Lender's liens and security interests shall not attach to the Debtor's Ford 2014 F-450, VIN 1FDTF4GT8EEA13734 (the "Vehicle"), and the Vehicle shall not constitute Prepetition Collateral or Cash Collateral; and (ii) the Vehicle shall not be subject to Lender's Adequate Protection Lien (as defined below).

(b)   Associated Bank holds valid, duly perfected, first-priority liens upon and security interest in and to all of the cash of Debtor derived from the Prepetition Liens to the extent of its Prepetition Liens, whether obtained on, prior to, or after the Petition Date (which liens and security interests constitute and are included in the term "Prepetition Liens" as used herein).

5.   *Authorized Use of Cash Collateral.*

(a)   *Specified Period.* Subject to and solely in accordance with the express terms and conditions of this Ninth Interim Order, Debtor is hereby authorized, pursuant to sections 361 and 363 of the Bankruptcy Code, to use the Cash Collateral of Associated Bank on an interim basis solely for the period (the "Specified Period") from the Petition Date through the earliest to occur of: (i) 5:00 p.m. Central Time on January 4, 2018, and (ii) the Termination Date (as defined below). The Debtor's authority to use the Cash Collateral shall terminate automatically upon the expiration of the Specified Period without further notice or order of this Court, unless otherwise extended or waived by Associated Bank.

8

(b)     *Use of Collateral.* Subject to and solely in accordance with the express terms and conditions of this Ninth Interim Order, the Cash Collateral may only be used by the Debtor in accordance with the budget (the "Budget") attached to this order as **Exhibit "A"**, plus a variation in the Budget not to exceed 8% ("Authorized Cash Collateral"). In addition, Debtor's use of the Authorized Cash Collateral may only be extended by express written consent of Associated or by order of the Court. The Authorized Cash Collateral shall be maintained only in accounts with Associated Bank. Notwithstanding the immediately preceding sentence, the Debtor is authorized to maintain no more than $10,000 in its account with Forest Park (the "Forest Park Account"), and shall immediately transfer any funds above such amounts to the Debtor's operating account maintained with Associated Bank.

6.    *Adequate Protection.* Associated Bank is entitled to receive adequate protection to the extent of any diminution in the value of its Prepetition Collateral results from Debtor's use of the Authorized Cash Collateral. The adequate protection provided herein and other benefits and privileges provided herein are consistent with and authorized by the Bankruptcy Code and are necessary to protect Associated Bank from the diminution of its interests in the Collateral from and after the Petition Date. Accordingly, in exchange for Debtor's use of the Authorized Cash Collateral, Associated Bank shall receive adequate protection as follows:

(a)     *Use.* Debtor shall use the Authorized Cash Collateral only in accordance with paragraph 5 above.

(b)     *Adequate Protection Payments.* Debtor shall continue to make monthly adequate protection payments of $38,000 to Lender in immediately available funds. The next monthly adequate protection payment is due on December 24, 2017, and each successive monthly adequate protection payment is due on the 24th day of each month thereafter unless or

9

until such monthly adequate payment is modified by order of the Court or written agreement of the Lender and Debtor.

(c) *Adequate Protection Lien.* Associated Bank shall receive (i) a replacement lien in the Prepetition Collateral and in the post-petition property of Debtor of the same nature and to the same extent and in the same priority it had in the Prepetition Collateral, and to the extent such liens and security interests extend to property pursuant to Section 552(b) of the Bankruptcy Code, and (ii) an additional continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interest in and lien on all cash or cash equivalents, whether now owned or in existence on the Petition Date or thereafter acquired or existing and wherever located, of Debtor (collectively, the "Adequate Protection Lien"). Except as expressly set forth in this Ninth Interim Order, the liens and security interests granted in this Ninth Interim Order shall not be: (i) subject to any lien which is avoided and preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code; or (ii) subordinated to or made pari passu with any other lien under section 364(d) of the Bankruptcy Code or otherwise.

(d) *Automatic Perfection.* The Adequate Protection Lien shall be deemed valid, binding, enforceable, and perfected upon entry of this Ninth Interim Order without the need to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien, or any similar document or the need to take any other action (including entering into a deposit control agreement with respect the Forest Park Account and taking possession of any of the collateral subject to the Adequate Protection Lien) in order to validate the perfection of any of the Adequate Protection Liens. If Associated Bank shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds, or UCC-1 financing statements, or take any other

action (such as entering into a deposit control agreement relating to the Forest Park Account) to validate the perfection of any part of the Adequate Protection Lien, Debtor and its officers are directed to execute any documents or instruments as Associated Bank shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded as of the Petition Date. Associated Bank may, in its discretion, file a certified copy of this Ninth Interim Order in any filing office in each jurisdiction in which a Debtor is organized or has or maintains any collateral or an office, and each filing office is directed to accept such certified copy of this Ninth Interim Order for filing and recording.

(e) *Superiority Claim*. Upon entry of this Ninth Interim Order, pursuant to Sections 503(b) and 507(b), Associated Bank shall be deemed to have an allowed superpriority adequate protection claim to the extent the Adequate Protection Lien is not adequate to protect Associated Bank against the diminution in value of the Prepetition Collateral (the "Superpriority Claim" together with the Adequate Protection Lien, the "Adequate Protection Obligations"). Associated Bank shall provide written notice to the Debtor and the Official Committee of Unsecured Creditors (the "Committee")[3] of the amount and basis for any Superpriority Claim, and the Debtor and the Committee shall have fourteen (14) days from the date of such notice to challenge the amount of, or basis for, the Superpriority Claim.

(f) *Priority*. Subject only to the Carve-Out (defined below), the Adequate Protection Obligations shall have priority over all liens and administrative expenses in this Case of the kind specified in or arising or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 552, 726 and 1114 of the Bankruptcy Code, whether or not such

---

[3] The Committee was appointed in this case on March 9, 2017.

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment, or otherwise.

(g)  *Reservations.* Associated Bank reserves the right to argue for and demand, and Debtor and the Committee reserve their right to challenge Associated Bank's arguments and demands, including requests for additional adequate protection for periods not covered by this Ninth Interim Order, including, without limitation, in connection with the Final Hearing and any Final Order (each as defined below).

7.  *Termination of Use of Cash Collateral.* Notwithstanding anything to the contrary contained herein, Debtor's right to use the Cash Collateral shall expire on the earliest to occur of: (i) the expiration of the Specified Period; (ii) the conversion of any Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (iii) the appointment of a trustee or examiner or other representative with expanded powers for any Debtor; (iv) the occurrence of the effective date or consummation of a plan of reorganization, (v) Debtor's non-compliance with any term or provision of this Ninth Interim Order and Debtor's failure to cure such non-compliance upon five (5) days' written notice from Associated Bank, or (vi) the filing of any adversary proceeding by the Debtor or the Committee against either of the Lenders, or an adversary proceeding challenging the validity, enforceability or priority of the Prepetition Liens, Prepetition Loan Documents or Prepetition Loan Debt by any party in interest, against either of the Lenders for any reason (the first such occurrence being hereinafter referred to as the "Termination Event"). On and after the Termination Event, Associated Bank may terminate any or all of Debtor's authority to use the Authorized Cash Collateral upon three (3) business days' notice to Debtor, counsel to Debtor, counsel to the Committee, and the U.S. Trustee (the last day of such three business day period, the "Termination Date"); provided, however, that the Debtor and the

Committee reserve the right to move the Bankruptcy Court to enter an order finding that a Termination Event did not occur and Associated Bank consents to such motion being heard on an emergency basis. From and after the Termination Date, Debtor shall no longer, pursuant to this Ninth Interim Order, the Prepetition Loan Documents, or otherwise, be authorized to use the Authorized Cash Collateral, unless authorized by the Court (and the limited consent herein to the use of Authorized Cash Collateral shall be terminated).

8. *Financial Reporting and compliance with Prepetition Loan Documents.* Debtor shall (i) furnish Associated Bank and the Committee with all financial data and documents required under the Prepetition Loan Documents, (ii) provide Associated Bank and the Committee with a weekly actual-to-budget report by close of business each Tuesday for the week prior, (iii) provide Associated Bank and the Committee with current accounts receivable aging, inventory and accounts payable reports within 5 calendar days of the entry of this Ninth Interim Order, and within 15 days of each prior month's end, (iv) maintain and pay premiums for insurance to cover the Collateral from fire, theft, and water damage, and maintain the Collateral in good repair, (v) upon request, make available to Associated Bank evidence of that which constitutes its Collateral or Cash Collateral, (vi) timely file with the Court all monthly operating reports required under chapter 11 of the Bankruptcy Code, and (vii) upon notice and within normal business hours, permit Associated Bank to inspect Debtor's books and records

9. *Investigation Period.* The period of time (the "Investigation Period") for the Debtor, the Committee, or any other party in interest (i) to investigate and challenge Associated Bank's assertions set forth above, (ii) to investigate and challenge the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset, or subordinate any of the Prepetition Loan Debt or any Prepetition Liens and (iii) to assert any other claims or causes of

action against Lenders has expired. Accordingly, the Debtor, Committee, and all other parties in interest are forever barred from taking any such action or asserting any objection to the validity, priority, extent, and/or perfection of Associated Bank's liens, security interests, mortgages, and any other interest of Associated Bank in Debtor's assets; and (ii) Associated Bank's claim in the amount of the Prepetition Loan Debt will be deemed allowed and secured to the extent of the value of the Collateral.

10.    *Modification of the Stay.* The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as of the date hereof as necessary to effectuate all of the terms and provisions of this Ninth Interim Order, including, without limitation, to: (a) permit Debtor to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit Debtor to perform such acts as Associated Bank may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit Debtor to incur all liabilities and obligations to Associated Bank under this Ninth Interim Order; (d) authorize Debtor to pay, and Associated Bank to retain and apply, payments made in accordance with the terms of this Ninth Interim Order; and (e) permit Associated Bank to deliver written notice of a Termination Event in accordance with paragraph 7 above.

11.    *Carve-Out.*

(a)    As used in this Ninth Interim Order, "Carve-Out" means: (a) the unpaid fees of the clerk of the Bankruptcy Court or District Court, as applicable, and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b); and (b) the aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to Court order by the Committee in an amount not to exceed

$57,500.00;[4] provided that the Carve-Out shall not include the fees and expenses, if any, of any such professional persons incurred, directly or indirectly, in respect of, arising from or relating to: (i) the initiation or prosecution of any action contesting the validity, priority or extent of the claims or liens asserted by either of the Lenders; (ii) any action for preferences, fraudulent conveyances, and other avoidance power claims against one or both of the Lenders; or (iii) any other cause of action of the Debtor or its estate against one or both of the Lenders; and provided, further, that the Carve-Out shall only be available to pay the fees and expenses set forth in (a) and (b) above, to the extent unencumbered funds are not otherwise available.

(b)    Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in the Debtor's Chapter 11 case, in any conversion of the Debtor's chapter 11 cases pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other superpriority claims, are or will be prior to or on a parity with the claims of Associated Bank against the Debtor arising, as applicable, out of the Adequate Protection Obligations or any provision of this Ninth Interim Order or with the Adequate Protection Lien granted herein on, in and to the Collateral.

12.    *Effectiveness.*    This Ninth Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

13.    *Interlocutory Order and No Modification of Associated Bank's Adequate Protection.* This is an interlocutory order. Nothing contained herein shall be deemed or construed to (a) limit Associated Bank to the relief granted herein, (b) bar Associated Bank from seeking

---

[4] The Second Interim Order provided a Carve-Out in the maximum aggregate amount of $15,000.00 for allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to Court order by the Committee. With this Ninth Interim Order, the Carve-Out for professional persons retained by the Committee pursuant to Court order is increased to a maximum aggregate amount of $57,500.00.

other and further relief (including without limitation relief from the terms of this order) for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same, or (c) require Associated Bank to make any further loans or advances to the Debtor. This Ninth Interim Order may be modified for cause shown by the Debtor, Associated Bank or any other party-in-interest on due notice. No such modification, however, shall deprive Associated Bank of its interest in Debtor's property (pre-petition and post-petition)

14. *Reservation of Rights.* The terms of this Ninth Interim Order and the Lenders and Committee's consent to the entry of the order shall not limit or preclude any grounds the Committee or the Lenders may raise to oppose or challenge the terms of any subsequent order regarding the Debtor's use of Lenders' Cash Collateral. Except as specifically set forth in this Ninth Interim Order, none of the Debtor, the Lenders or the Committee shall be deemed to have suspended or waived any of its or their rights or remedies under this Ninth Interim Order.

15. *Final Hearing; Notice; Objection Deadline.*

(a) *Final Hearing.* The hearing to consider entry of a final order (as "Final Order") on the Motion shall take place on January 2, 2018, at 10:00 a.m. (the "Final Hearing").

(b) *Notice of Final Hearing.* Within three business days of the entry of this Ninth Interim Order, Debtor shall serve, by first class mail or electronic mail, a copy of this Ninth Interim Order and a notice of the Final Hearing (the "Final Hearing Notice"), to: (a) the United States Trustee; (b) Associated Bank's counsel; (c) all known secured creditors of Debtor; (d) Debtor's 20 largest unsecured creditors; (e) the Committee's counsel; and (f) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 as of the date of this Ninth Interim Order.

16. *Objection Deadline.* The Final Hearing Notice shall state that any party-in-interest objecting to the relief sought at the Final Hearing shall be made in writing setting forth with particularity all facts relied upon and all grounds therefor, and shall be filed with the Court on December 29, 2017 (the "Objection Deadline"), and concurrently served so as to be *actually received* by the Objection Deadline by the following parties: (i) counsel for Debtor; (ii) counsel for Associated Bank, Lathrop & Gage, LLP, 155 North Wacker Drive, Suite 3000, Chicago, Illinois 60661, Attn: Bryan Minier; and (iii) the U.S. Trustee.

Dated:                                                ENTERED:


_____
**UNITED STATES BANKRUPTCY JUDGE**

| | | WEEK ENDING 12/1/2017 BUDGET | WEEK ENDING 12/8/2017 BUDGET | WEEK ENDING 12/15/2017 BUDGET | WEEK ENDING 12/22/2017 BUDGET | WEEK ENDING 12/29/2017 BUDGET |
|---|---|---|---|---|---|---|
| ACCTS REC BEGIN | | $2,768,425 | $2,762,645 | $2,759,645 | $2,745,645 | $2,728,395 |
| SALES | | $300,000 | $300,000 | $300,000 | $300,000 | $300,000 |
| LESS COLLECTION | | ($305,780) | ($303,000) | ($314,000) | ($317,250) | ($336,750) |
| ACCTS REC END | | $2,762,645 | $2,759,645 | $2,745,645 | $2,728,395 | $2,691,645 |
| INVENTORY | | | | | | |
| BEGIN | | $2,802,198 | $2,836,948 | $2,889,448 | $2,939,448 | $2,990,948 |
| ADDED | | $135,000 | $155,000 | $155,000 | $155,000 | $155,000 |
| WORK IN PROCESS TOTAL CHANGE | | ($32,750) | ($35,000) | ($37,500) | ($36,000) | ($38,225) |
| MINUS USED | | ($67,500) | ($67,500) | ($67,500) | ($67,500) | ($67,500) |
| END | | $2,836,948 | $2,889,448 | $2,939,448 | $2,990,948 | $3,040,223 |
| NET CASH FLOW | | | | | | |
| BEGIN BALANCE | | $26,389 | $76,401 | $38,836 | $62,196 | $10,961 |
| CASH REC'D | | $305,780 | $303,000 | $314,000 | $317,250 | $336,750 |
| LESS PAYOUTS | | ($255,768) | ($340,565) | ($290,640) | ($368,485) | ($277,768) |
| ENDING BALANCE | | $76,401 | $38,836 | $62,196 | $10,961 | $69,943 |
| EXPENSES: | | WEEK ENDING | WEEK ENDING | WEEK ENDING | WEEK ENDING | WEEK ENDING |
| WAGES | | 12/1/2017 | 12/8/2017 | 12/15/2017 | 12/22/2017 | 12/29/2017 |
| WAGES | W | $12,105 | $12,105 | $12,105 | $12,105 | $12,105 |
| OFFICERS COMP | W | $6,080 | $6,080 | $6,080 | $6,080 | $6,080 |
| P/R TAXES | W | $1,094 | $1,094 | $1,094 | $1,094 | $1,094 |
| DENTAL - LTD INSURANCE | M | | $5,400 | | | |
| HEALTH INS(PD 3RD OF MTH) | M | | $23,000 | | | |
| P/R PROCESSING | W | $210 | $210 | $210 | $210 | $210 |
| 401K CONTRIBUTION | W | $4,231 | $4,231 | $4,231 | $4,231 | $4,231 |
| TOTAL PAYROLL | | $23,720 | $52,120 | $23,720 | $23,720 | $23,720 |
| OCCUPANCY | | | | | | |
| RENT | M | | $1,000 | | | |
| MAINTENANCE | W | | | $122 | | |
| SCAVENGER | M | | $350 | | | |
| UTILITIES | M | | $17,100 | | $39,350 | |
| TOTAL OCCUPANCY | | $0 | $18,450 | $122 | $39,350 | $0 |
| ADM. AND SELLING EXPENSE: | | 12/1/17 | 12/8/17 | 12/15/17 | 12/22/17 | 12/29/17 |
| WAGES | W | $8,059 | $8,059 | $8,059 | $8,059 | $8,059 |
| P/R TAXES | W | $608 | $608 | $608 | $608 | $608 |
| AUTO MAINT | W | | $200 | | | |
| SUBSCRIPTIONS | W | | $250 | | | |
| INSURANCE INTEREST (LOANS) | M | | | | | |
| INTEREST PYMT TO SECURED LENDER | | | | | $38,000 | |
| BANK LOAN FEES | M | | | | | |
| ADMIN/CONTRACTS-FORMS | M | | | | | |
| Professional Services  LAWYER | | | $5,000 | | | |
| Professional Services Equip Appraisal PHASE II | | | | | | $22,000 |
| Professional Services  ACCTG | | | | | | |
| Professional Services Financial Advisor | | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 |
| Employee Meetings | | | | | | |
| ADMIN/GENERAL | M | | | | | |
| ASSOCIATION DUES | M | | $450 | | | |
| LIFE INSURANCE | M | | $3,200 | | | |
| SALES EXPENSE | M | | $825 | | | |
| ADVERTISING EXPENSE | M | | $3,625 | | | |
| SALES INCENTIVE EXPENSE | M | | | | $4,367 | |
| | | $18,667 | $32,217 | $18,667 | $61,034 | $40,667 |
| OTHER EXPENSES: | | 12/1/17 | 12/8/17 | 12/15/17 | 12/22/17 | 12/29/17 |
| ACCOUNTING - PENSION | M | | | | | |
| AUTO LEASE  (3) | M | | $2,185 | | | |
| CAPITAL EXPENDITURES | M | | $6,500 | $10,000 | $20,000 | |
| COMMISSIONS | M | | | $24,750 | | |
| OFFICE SUPPLIES | W | | | | | |
| REAL ESTATE TAXES (1/12TH) | M | | $11,134 | | | |
| POSTAGE | M | | | | | |
| TELE & COMMUN | M | | $2,268 | | | |
| EQIUP LEASE  (COPIER) | | | $410 | | | |
| INSURANCE 25 % down 6/29/17 | M | | | | $11,000 | |
| COMPUTER EXP | M | | $1,200 | | | |
| BANK SER CHGES (WIRE FEES) | M | | $700 | | | |
| COST OF GOODS SOLD | | $213,381 | $213,381 | $213,381 | $213,381 | $213,381 |
| TOTAL OTHER EXP | | $213,381 | $237,778 | $248,131 | $244,381 | $213,381 |
| TOTAL ALL EXPENSES | | $255,768 | $340,565 | $290,640 | $368,485 | $277,768 |
| CASH O. H. END OF WK | | $76,401 | $38,836 | $62,196 | $10,961 | $69,943 |
| TOTAL A/R, INV, & CASH | | $5,675,994 | $5,687,929 | $5,747,289 | $5,730,304 | $5,801,811 |