UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                    )
                                          )   Case No. 17-05206
ANDERSON SHUMAKER COMPANY,                )   Chapter 11
                                          )   Judge Cassling
        debtor/debtor-in-possession.      )

## **DEBTOR'S DISCLOSURE STATEMENT**

**DEBTOR'S COUNSEL**:
Scott R. Clar
(Atty. No. 06183741)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
(312) 641-6777

# TABLE OF CONTENTS

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

    Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . . . . . . . . -4-

    Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN . . -6-

PURPOSE OF DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

HISTORY AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

OTHER ASPECTS OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

LIQUIDATION ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

IMPLEMENTATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

FEASIBILITY AND FAIRNESS OF PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                              )
                                    )   Case No. 17-05206
ANDERSON SHUMAKER COMPANY,          )   Chapter 11
                                    )   Judge Cassling
        debtor/debtor-in-possession. )

## DEBTOR'S DISCLOSURE STATEMENT

ANDERSON SHUMAKER COMPANY, an Illinois corporation, debtor/debtor-in-possession herein ("Debtor"), submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code, and in conjunction with its Plan of Reorganization ("Plan").  A copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.

## INTRODUCTION

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 23, 2017 (the "Petition Date").  The Debtor has been operating its business and managing its financial affairs as a debtor-in-possession since the Petition Date.  No trustee or examiner has been appointed. An Official Committee of Unsecured Creditors has been appointed to serve in this reorganization case.  The Debtor is located at 824 S. Central, Chicago, Illinois (the "Business Premises"). The Debtor owns the Business Premises.  The Plan is being filed within the exclusive periods established under Sections 1121(b) and 1121(d) of the Bankruptcy Code and prior Orders of the Bankruptcy Court.

The Debtor is an Illinois corporation that provides open die forgings and custom forgings in various shapes and finishes using stainless steel, aluminum, carbon steel and various grades of alloy steel,  employing approximately forty-three (43) people.  The proposed Plan contemplates paying a 10% dividend to unsecured creditors over a five (5) year period.  The Debtor will receive new value in the amount of $60,000.00, from William

-1-

Klaczynski, President, Robert Pollman, Controller and CFO, Peter Jaworowski, VP and Process Engineering, John F. Schwartz, VP of Manufacturing,  Ronald Wolf, Sales Manager, and Virginia Morgan, Office Manager (the "Participants"). The Participants will be equal shareholders in the event the Participants are the successful bidders at auction for the shareholders interest of the Reorganized Debtor, currently owned by Richard Tribble.  After confirmation, the Debtor's Board of Directors will consist of Joe Kavilir, Tony Siedelman, Paul Mokhatas, Dan Watts, Ron Nisson, and Jay Cohen.

The Debtor is the proponent of the Plan.  Funding for the Plan will be provided by operating income of the Debtor. The Plan provides for 10% distribution to the holders of Allowed Unsecured Claims from the Debtor's operations over a five (5) year period, and a restructuring of its secured debt to reflect the value of the secured creditors' collateral. Associated Bank ("Bank") is the Debtor's primary secured lender. The Bank is owed approximately $11,000,000.00, but the Bank's collateral is valued, for purposes of the Plan, at approximately $4,500,000.00, which will be repaid over a five (5) year period by monthly payments of $32,891.77, reflecting an interest rate of 6.25% and a twenty (20) year amortization.  At the end of the five (5) year period, the remaining balance will be paid through refinancing (the "Balloon Payment").

## <u>SUMMARY OF TREATMENT OF CLAIMS UNDER THE PLAN</u>

The following is a chart showing the treatment of Claims and Interest under the Plan:

| Claimant | Treatment Under the Plan | Source of Funds |
|---|---|---|
| Class 1: Bank and subsumed secured claims (Forest Park Bank and Trust and SBA) | Secured Claim of $4,500,000.00 to be amortized over a twenty (20) year period at 6.25% interest, to be paid monthly in the amount of $32,89.77 over five (5) years from the Effective Date, in the event not repaid on the fifth anniversary of the Effective Date, Bank shall be entitled to exercise any and all remedies under loan documents to be created between the Debtor and Bank. Class 1 Claim is impaired. | Debtor's operations, and pay down realize from liquidation of "key man" life insurance policies (approximately $473,000.00) |
| Class 2: Secured Claim of Cook County Treasurer for pre-petition real estate taxes attaching to real property located at 824 S. Central, Chicago, Illinois, utilized by the Debtor in its business operations, and in the approximate amount of $130,000.00. | To be paid on a quarterly basis over a five (5) year period from the Petition Date, beginning with the first quarter beginning sixty (60) days after the Effective Date. Class 2 Claim is unimpaired | Debtor's operations |
| Class 3: Secured Claim of Ford Motor Credit ("FMC") | Secured Claim will be repaid according to the terms of the loan documents between the Debtor and FMC on a monthly basis. | Debtor's operations |
| Class 4: General Unsecured Claim other than Bank's Deficiency Claim, in the approximate amount of $2,200,000.00 | Class 4 Claims will be repaid 10%, on a quarterly basis, over a five (5) year period beginning with the first quarter beginning sixty (60) days after the Effective Date. | Debtor's operations |
| Class 5: Deficiency Claim of the Bank in the approximate amount of $5,500,000.00 | Class 5 Claims will be repaid the same percentage and in the same manner as Class 4 Claims. | Debtor's operations |

| Class 6: Interest of Richard Tribble | The Class 6 Interest of Richard Tribble, consisting of $100% of the Shareholder interests in the Debtor, will be cancelled. | |

## Executory Contracts and Unexpired Leases

The Debtor is a party to two (2) vehicle leases with Cab West, LLC (the "Vehicle Leases").

Assumption means that the Debtor has elected to continue to perform the obligations under the contract or unexpired lease, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

The Debtor is unaware of any other executory contracts or unexpired leases.  If a party objects to the rejection of an executory contract or unexpired lease or to the assumption of an executory contract or unexpired lease, the proposed cure of any defaults, or the adequacy of assurance of performance, they must file and serve their objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.   The Debtor, at present, plans to assume the Vehicle Leases.

**The deadline for filing a proof of claim based upon a claim arising from the rejection of a lease or contract through the Plan will be thirty (30) days after the Effective Date**.  Any claim based on the rejection of a contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.   The Debtor shall have thirty (30) days after the filing of the proof of claim for rejection damages to object to the claim, if any.

## Risk Factors

Certain risk factors are inherent in most commitments made pursuant to a Plan of Reorganization in a Chapter 11 case.  If such plans are accepted, it is usually because they represent a greater hope for returns and dividends than in a liquidating Chapter 7 case.

All of the risk factors inherent in commitments made pursuant to a Plan of Reorganization in Chapter 11 cases are present in this case.

The Plan contemplates that the Debtor's current officers, William Klaczynski, COO and Robert Pollman, CFO, will continue to serve in these capacities.

## PURCHASE OF INTEREST IN THE REORGANIZED DEBTOR

The Participants will place the sum of $60,000.00 as new value to purchase the ownership interests of the post-confirmation Reorganized Debtor.  The current 100% shareholder interest owned by Richard Tribble will be cancelled.  All Creditors and the general public will have an opportunity to bid for one hundred percent (100%) of the ownership interests in the Reorganized Debtor upon the same terms and conditions offered by K&P, in accordance with the following procedures (as may be approved by the Bankruptcy Court not less than seven (7) days preceding the Confirmation Hearing (the "Bid Procedures").  Creditors will not be permitted to bid their claims as part of the purchase price.  The Debtor will publish notice of the sale and the terms of the sale in a newspaper of general circulation at least fourteen (14) days prior to the hearing on confirmation of the Plan.  Those parties seeking to acquire one hundred percent must serve written notice of their intention to bid on counsel for the Debtor and the United States Trustee (the "Notice Parties"), which notice shall contain the bidder's name, address, financial statements and tax returns for the last two years , the terms of the bid and a verified statement that if the bid is accepted, the bidder will agree to abide by the terms of the sale as described above and perform the obligations of the Plan in their entirety.  The written notice must be received by Debtor's counsel on or before the last day to file ballots accepting or rejecting the Plan.  The failure to provide written notice within the time provided will conclusively be deemed a waiver of the opportunity to purchase one hundred percent (100%) of the ownership interests in the Reorganized Debtor.  In the event that there are competing bids for one hundred percent (100%) of the ownership interests in the Reorganized Debtor, the

Court will hold an auction at the Confirmation Hearing. Competing bids will be offered at increments of $5,000.00. The successful bidder shall then be awarded one hundred percent (100%) of the ownership interests in Reorganized Debtor. Payment for the ownership interests will be due on the eleventh (11th) day after the Effective Date of the Plan. In the event that the successful bidder fails to make the required payment, then the bid will be deemed withdrawn and the ownership interests will be awarded to the next highest bidder.

## SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Plan has one (1) category of Administrative Claims, five (5) classes of creditors (Classes 1 through 5), and one (1) class of interests (Class 6). The Claims and Interests, and the treatments thereof under the Plan consist of the following:

**Class 1:** The Allowed Secured Claim of the Bank will be paid as a secured claim of $4,500,000.00 at the interest rate of 6.25%, amortized over twenty (20) years, and repaid in monthly payments of with the Balloon Payment, five (5) years from the Petition Date, in monthly payments of $32,891.77,[1] with a lump sum payment to be made on the fifth (5th). The Class 1 Claim of the Bank is impaired.

**Class 2:** The Allowed Secured Claim of the Cook County Treasurer for unpaid real estate taxes in the approximate amount of $130,000.00 is the Class 2 Claim. The Cook County Treasurer will be repaid pursuant to Section 507(a)(8) of the Bankruptcy Code quarterly over a period of five (5) years from the Petition Date. The Class 2 Claim is impaired.

**Class 3**: The Secured Class 3 Claim of Ford Motor Credit ("FMC") will continue to be paid on a monthly basis according to the terms of the loan documents between the Debtor and FMC. Class 3 is unimpaired.

---

[1] The Class 1 Claim will be further reduced by any amount realized (thought to be approximately $473,000) by the liquidation of "Keyman" life insurance policies which are a part of the Bank's collateral.

**Class 4:**   Class 4 Claims consist of Allowed General Unsecured Claims other than the Bank Deficiency Claim. Class 4 claims will be paid 10% of their claims in quarterly installments over five (5) years, beginning with the first quarter sixty (60) days after the Effective Date. It is estimated that Class 4 Claims total $2,200,000.00. Class 4 Claims are impaired.

**Class 5:**   The Deficiency Claim of the Bank is the Class 5 Claim in the approximate amount of $5,500,000.00.  The Class 5 Claim will be paid 10% in quarterly installment over five (5) years from the period beginning with the first quarter beginning sixty (60) days after the Effective Date. The Class 5 Claim is impaired.

**Class 6:**   The 100% shareholding interest of Richard Tribble. The Class 6 interest will be cancelled.

**Administrative Claims** [2]

Administrative Claims are provided for in Article II, Section 2.1 of the Plan, and consist of the Allowed Claim for fees and expenses of the law firm of Crane, Simon, Clar & Dan ("CSCD")[3], counsel for the Debtor, employed pursuant to an Order entered by the Bankruptcy Court, RSM, LLC ("RSM"), the Debtor's tax counsel and Fort Dearborn Partners ("FDP"), the Debtor's financial advisor.  The fees and expenses of CHSWC are projected to be approximately $50,000.00 in excess of the pre-petition $75,000.00 retainer paid to CHSWC, and an interim fee award in the approximate amount of $14,000.00. RSM's fees are projected to be $25,000.00, and FDP's fees $10,000.00. No professional shall be paid unless and until the Bankruptcy Court has entered appropriate orders allowing the compensation and reimbursement of expenses requested.  The Administrative Claim under Sections 503(b)(9) and 546(c) of the Bankruptcy Code of Ellwood Quality Steel

---

[2] All amounts projected for professional fees are the Debtor's estimates and are, therefore, subject to change.

[3]CSCD was formerly known as, and was employed as Crane, Heyman, Simon, Welch & Clar.

("EQS") and Ellwood National Steel Company ("ENS") in the amount of $77,052.80 will also be paid on or before sixty (60) days after the Effective Date, or as otherwise agreed between the Debtor and EQS and ENS.

**Claims Objections**

Except as otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, the Debtor shall file any and all objections to the allowance of claims or interests on or within 120 days of Confirmation of this Plan, unless extended by Order of the Bankruptcy Court. Cause shall not be a requirement for an extension of this deadline.

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and Interests in the Debtor who are entitled to vote their acceptance or rejection of the Plan. This Disclosure Statement is disseminated in connection with the solicitation of acceptances of the Plan filed by the Debtor. The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable investor, typical of the holder of Claims and Interests which are impaired under the Plan, to make an informed judgment about the Plan.

The information contained in this Disclosure Statement has been submitted by the Debtor, unless specifically stated to be from other sources. No representations concerning the Debtor or this Plan, other than those set forth in this Disclosure Statement, have been authorized by the Debtor. The Debtor believes that all of the information contained in this Disclosure Statement is accurate. However, the Debtor is unable to warrant that there are no inaccuracies.

**Under the Bankruptcy Code, a Class of Claims is considered to have accepted the Plan if both a majority in number and two-thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan. The Claims of those who do not vote are not counted in determining whether the requisite statutory majority in number**

and dollar amount have voted for acceptance.  Acceptance by the statutory majority will bind the minority who dissent and those who fail to vote.

The Plan requires that the holders of Allowed Claims in Classes 1, 3, 4, and 5 vote on Confirmation of the Plan.

## HISTORY AND BACKGROUND

Anderson Shumaker Company is an ISO 9001-2008 certified open die forging company that started operations in 1902 and is located in Chicago, Illinois. The Company filed for bankruptcy in February 2017. However, the Company continues to generate new business and is expected to grow its revenues by 9.7% in 2017. In 2011, the Company invested $17,500,000.00, financed 100% with debt, to expand its manufacturing space by 26,000 square fee and install a Williams White 2,500 ton press that has a 16 foot pit below the press. The Company operates three steam driven hammers, two radial ring rollers (150 and 300 ton) and a 2,500 ton hydraulic forging press. In addition to forging, the Company can also heat treat, machine, cut, hole bore and perform destructive and nondestructive testing. In May 2016, Richard Tribble, owner, retired as President and Bill Klaczynski was promoted to President. Due to continuing operating losses and the inability to service its debts, Anderson Shumaker filed Chapter 11 bankruptcy in February 2017.

The Company's current ownership and management team consists of the following:

-Bill Klaczynski, President
-Bob Pollmann, Controller and CFO
-Ron Wolf, Sales Manager
-Fred Schrantz, VP and Plant Manager
-Peter Jaworowski, VP and Process Engineering
-Virginia Morgan, Office Manager

The Company has 42 non-union employees of which, 32 are in manufacturing, 4 in sales and 6 in executive/administrative.

Approximately 54% of sales are house accounts managed by company personnel. The Company relies on independent sale representatives for geographic coverage and the

– 9 –

reps are paid a 5% commission on sales upon collection of accounts receivable. Sales commissions were temporarily reduced to 3% in February 2017 and will continue at that rate until December 31, 2017. Anderson Shumaker's customer base ranges in size and industry. In FY17, the Company's 5 largest customers represent approximately 34% of sales and operate in the oil/gas, aerospace and semiconductor industries. The Company has a typical customer concentration with the top 20 customers. In 2017 the top 20 customers comprised 60% of sales. YTD October 2017, the Company had orders from 275 different customers. The majority of customer orders are less than $3,000.00.

The Company owns and operates out of a facility that is over 100 years old and is located in an economically depressed location of the westside of Chicago. Although the majority of the equipment is old, it is well maintained and still relevant in today's forging environment.

Since the Petition Date, the Debtor has entered into nine (9) consensual cash collateral orders with the Bank and have made seven (7) adequate protection payments to the Bank, each in the amount of $38,000.00.

## OTHER ASPECTS OF THE PLAN

The Debtor shall be the disbursing agent charged with making the payments required under the Plan to the holders of Allowed Claims.

Upon Confirmation of the Plan, the Debtor shall be revested with its assets, subject only to the terms and conditions of the Plan. The Debtor shall be entitled to continue to operate and manage its business and financial affairs without further Order of the Bankruptcy Court. Payments to creditors pursuant to the Plan will be made from existing cash and from funds from continued business operations.

Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest or otherwise enforcing its Claims against the Debtor and its assets in this bankruptcy case except as authorized in the Plan. Such injunction shall not affect any secured creditor's right to foreclose upon any

security interest provided in the Plan in the event of any post-Confirmation default under the Plan.  This injunction will remain in effect until all distributions under the Plan have been made.

The Plan is self-executing.  Upon payment as required by the Plan, any liens supporting such Claims shall be deemed released and discharged.

All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which have not been previously assumed, assigned, rejected or otherwise terminated by the Debtor shall be assumed upon Confirmation of the Plan pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code.  Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to the Plan must be filed on or within thirty (30) days following the rejection.  Further, with respect to Claims for default relating to any unexpired lease or executory contract that is assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following Confirmation. Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 3 Claims.  Allowed Claims for default emanating from the assumption of unexpired leases and executory contracts will be treated as Administrative Claims.  Any person failing to file such a Claim within the time provided in the Plan shall be forever barred from asserting such Claim and shall not receive any distribution under the Plan.  The provisions for assumption, assignment and rejection shall be equally applicable to executory contracts and unexpired leases of real and personal property.

The Bankruptcy Court shall retain jurisdiction for certain specified purposes.  Any distribution under the Plan that remains unclaimed sixty (60) days after the distribution is made will become property of the Debtor, and will not be recouped in subsequent distributions. The Debtor will have the right to make any distribution to creditors earlier than required by the Plan.  The Debtor shall have the right, power and authority after Confirmation of the Plan to commence any preference, fraudulent conveyance or other

-11-

litigation it deems appropriate.[4]  The Bankruptcy Court shall retain jurisdiction for such litigation.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest.  Except as expressly provided in the Plan or the Bankruptcy Code, no interest or penalties accruing on or after February 17, 2016, shall be paid on any Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment.  To the extent necessary, pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

## LIQUIDATION ANALYSIS

Failure of the Debtor to obtain Confirmation of the Plan could result in a forced liquidation or a conversion to a case under Chapter 7 of the Bankruptcy Code and immediate termination of the Debtor's business operations.  Under the Plan, unsecured creditors are being paid 10% of their Allowed Claims. In the event of liquidation, all proceeds would be paid to the Bank on account of their $11,000,000.00 Secured Claim. Attached hereto as **Exhibit B** is the Liquidation Analysis of the Debtor's assets.

In the event of a forced liquidation, any proceeds realized from liquidation of the Debtor's assets will first be used to pay the costs of collection, which for purposes of this discussion, the Debtor has estimated to be an amount equal to 10% of the gross collection proceeds.  Once the costs of collection have been paid, Secured, Administrative and Priority Claims will be paid.  Only after making the above disbursements of liquidation proceeds could any distribution be made to general unsecured creditors. In this case, the Debtor has secured claims in excess of $11,000,000.00, and collateral having an approximate liquidation value of $4,500,000.00 at best.

---

[4]/ The Debtor believes that no such litigation claims exist.

Clearly, the dividend being paid to unsecured creditors under the Plan represents substantially more than such unsecured creditors would ever receive in a liquidation (which, according to the above analysis, is zero).

Upon forced liquidation, unsecured creditors would receive no distribution. Accordingly, the Plan offers all creditors substantially more than such creditors would receive in a liquidation.

## IMPLEMENTATION OF THE PLAN

As discussed throughout this Disclosure Statement, distributions under the Plan will be made from future operations.

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement as **Group Exhibit C** are the Debtor's 2016 tax returns, and attached as **Group Exhibit D** are the Debtor's corporate financial statements for 2015 and 2016.  The purpose of these Exhibits is to provide creditors with historical financial information concerning the Debtor's ability to make the payments required under the Plan.  These balance sheets and income statements were prepared by the Debtor, and are based upon an analysis of actual business activity.  As further evidence of the feasibility of the Debtor's Plan, the Debtor attaches **Group Exhibit E**, consisting of the summary page of the Debtor's monthly reports filed since the Petition Date.

Attached as **Exhibit F** are the Debtor's five (5) year budget projections, representing reasonable calculations  based upon historical projections of the Debtor's business.  These projections, prepared by FDP, clearly reflect the Debtor's ability to perform under the proposed Plan.

The Debtor believes that the Plan represents an opportunity for the holders of Allowed Claims to receive substantially more than such claimants would receive in a forced liquidation.  The Plan is also fair.

-13-

## <u>RECOMMENDATION</u>

The Debtor recommends that those persons entitled to vote, vote to accept the

Plan.

Anderson Shumaker Company, an Illinois corporation,

debtor/debtor-in-possession

By: /s/Scott R. Clar
One of its Attorneys

**<u>DEBTOR'S COUNSEL</u>**:
Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
312) 641-6777
W:\MJO2\Anderson Shumaker\Disclosure Stmt.wpd

-14-