# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ANDERSON SHUMAKER COMPANY, | ) | Case No. 17-05206-DRC |
| | ) | |
| | ) | Hon. Donald R. Cassling |
| | ) | |
| Debtor. | ) | |

## ASSOCIATED BANK, N.A.'S OBJECTION TO
## THE DEBTOR'S DISCLOSURE STATEMENT

Associated Bank, N.A. ("Associated Bank"), by and through Lathrop Gage LLP, for its Objection to the Debtor's Disclosure Statement accompanying the Debtor's Plan of Reorganization, dated December 27, 2017, respectfully states as follows:

### INTRODUCTION

1. On February 23, 2017 (the "Petition Date"), the Anderson Shumaker Company ("Debtor") commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. Associated Bank is a secured creditor with a properly perfected first priority security interest in all of the Debtor's assets.

3. The Debtor filed its Disclosure Statement and proposed Plan of Reorganization (the "Plan") on December 27, 2017.

4. The Court should deny approval of the Disclosure Statement because it lacks adequate information as required under Bankruptcy Code § 1125 and because it describes a Plan that is not confirmable.

**ARGUMENT**

**The Debtor's Plan is Patently Unconfirmable**

5.     As to the second point, it is well settled that a disclosure statement should not be approved if it describes a plan of reorganization that is incapable of being confirmed as a matter of law. *In re Unichem Corp.*, 72. B.R. 95, 96 (Bankr. N.D. Ill. 1987); *In re Moshe*, 567 B.R. 438, 444 (Bankr. E.D.N.Y. 2017); *In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012). This is because it would be a waste of estate and judicial resources to go through the plan solicitation and confirmation process when the plan is facially not confirmable. *See, e.g., Moshe*, 567 B.R. at 444 ("If a Chapter 11 plan does not comply with Bankruptcy Code Section 1129, courts will not subject the estate to the expense of the vote solicitation and plan confirmation process."). Here, the Debtor's Plan is unconfirmable.

6.     The Debtor's Plan is not feasible as required under Bankruptcy Code § 1129(a)(11). A primary component of the Plan is a proposed balloon payment to Associated Bank in February 2022 that will likely be over $2,000,000. There is no information provided about how the Debtor will obtain the refinancing necessary to make the balloon payment. *In re GAC Storage Lansing, LLC*, 489 B.R. 747, 757-58 (Bankr. N.D. Ill. 2013) (finding that a plan was not feasible because the debtor failed to demonstrate that it would have the requisite financing to fund a balloon payment proposed under the plan); *In re Seasons Partners, LLC*, 439 B.R. 505, 515 (Bankr. D. Az. 2010) (holding that, when a plan contains a balloon payment, feasibility requires the plan proponent to present "credible evidence proving that obtaining that future financing is a reasonable likelihood.") Here, the Debtor presents no evidence that it will be able to secure the financing needed to make the balloon payment to Associated Bank.

7. Feasibility also requires the Debtor to present evidence supporting its projections under the plan. *GAC Storage Lansing, LLC*, 489 B.R. at 759-60. Here, the Debtor's feasibility analysis is entirely void of supporting documentation. As such, the Plan is not feasible.

8. For the above reasons, the Plan is patently unconfirmable on its face and the Court should deny approval of the Disclosure Statement.

**The Disclosure Statement Contains Inadequate Information**

9. Before approving a disclosure statement, a court must determine that it contains "adequate information," which is "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a).

10. While the determination of what constitutes "adequate information" is flexible and determined on a case-by-case basis, a disclosure statement must contain "all pertinent information bearing on the success or failures of the proposals in the plan" . . . and "all material information relating the risks proposed to creditors and equity interest holders." *In re Budd Co.*, 550 B.R. 407, 412-13 (Bankr. N.D. Ill. 2016) (*quoting In re Cardinal Congregate I*, 121 B.R. 760, 765-66 (Bankr. S.D. Ohio 1990)). In addition, courts have created the following non-exhaustive list of factors to consider when appropriate:

> (1) The events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the

3

creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*Budd*, 550 B.R. at 412-13 (*citing In re Metrocraft Publ'g Servs.,* 39 B.R. 568, 568 (Bankr. N.D. Ga. 1984)).

11. The Debtor's Disclosure Statement lacks adequate information as required by Bankruptcy Code § 1125(a) because it fails to disclose or adequately and fully discuss the following items:

(a) Associated Bank holds a claim of approximately $11,118,686.55 and the Plan proposes to bi-furcate the Bank's claim into a secured claim of $4,500,000.00 and an unsecured deficiency claim of $5,500,000.00. The Disclosure Statement fails to provide any justification for reducing Associated Bank's total claim by over $1.1 million.

(b) The Plan places the secured portion of Associated Bank's claim in Class 1 and proposes to pay it at 6.25% interest amortized over twenty years. Monthly payments would be $32,891.77 with a balloon payment for the balance owed being due five years from the Petition Date, or by February 22, 2022. The Disclosure Statement contains no information about the refinancing needed to make the balloon payment, the risks to Associated Bank that there simply will be no funds available to make the balloon payment, where the refinancing will come from, the potential lenders with whom they are having discussions, or lenders already approached. Such information is essential for Associated Bank to be able to assess the feasibility of the Debtor's Plan.

(c) The Disclosure Statement provides that Associated Bank's Class 1 claim will be reduced by the amount realized from the liquidation of "Keyman" insurance that is part of

4

the Bank's collateral. (<u>Disclosure Statement</u> at p. 6, fn. 1.) The Disclosure Statement asserts that the expected realization value for such insurance is $473,000 but provides no explanation as to how this estimated value was determined. The Disclosure Statement fails to identify when or how this insurance policy will be liquidated. In addition, the liquidation value of the Keyman insurance is not included in the liquidation analysis contained in Exhibit B to the Disclosure Statement. Given this fact, the Disclosure Statement must explain why the value of Associated Bank's secured claim is not at least $4,500,000 plus any amounts realized on the Keyman insurance.

(d) The Disclosure Statement should state whether the terms of the loan documents between Associated Bank and the Debtor will continue to apply, subject only to modifications contained in the confirmed Chapter 11 plan.

(e) The Plan places Associated Bank's unsecured deficiency claim in Class 5 and all other general unsecured claims in Class 4, but provides identical treatment to the two Classes. The Disclosure Statement fails to provide any explanation or justification for the separate classification, which appears to be nothing more than an improper attempt to gerrymander an accepting Class. A discussion setting forth the Debtor's reason for separately classifying Associated Bank's deficiency claim is essential to determining whether the Plan satisfies Bankruptcy Code § 1122(a).

(f) The Disclosure Statement does not contain sufficient information to determine whether the Plan satisfies the feasibility requirement of Bankruptcy Code § 1129(a)(11). The disclosure of information relating to the proposed balloon payment to Associated Bank is inadequate because there is no discussion about the refinancing that would be required to make the balloon payment, what efforts the Debtor has made to date to secure such refinancing and what will happen if the Debtor is unable to do so. The Debtor's feasibility analysis

5

is set forth in Exhibit F. However, the Disclosure Statement is devoid of any meaningful analysis of this two-page document and merely states that it is a five year budget "representing reasonable calculations based upon historical projections of the Debtor's business" and that it "clearly reflect[s] the Debtor's ability to perform under the proposed Plan." (Disclosure Statement at 13.) Exhibit F itself contains no supporting information. Past budget projections are not included. Despite the fact that the Debtor incurred a net loss of $2,000,000 in 2017, the Debtor projects a steady 3% annual growth over the next five years. Without past budget projections and support for the projected growth, there is no way for a creditor to determine if the projections are reasonable or feasible.

(g)  On page 9, the Disclosure Statement identifies the future management team but fails to provide any information concerning their experience, qualifications, and suitability to operate the Debtor post-confirmation. (Disclosure Statement at 9.) The Disclosure Statement does not disclose the salaries and other potential compensation of the proposed management team. The Disclosure Statement contains no discussion of the events and circumstances leading to the Debtor's bankruptcy filing, whether the proposed management team had any responsibility for these problems, or how such problems will be addressed or avoided post-confirmation. In addition, there is no discussion about the risks proposed to creditors under the Plan. Rather, the Debtor simply states that "[a]ll of the risk factors inherent in commitments made pursuant to a Plan of Reorganization in Chapter 11 cases are present in this case." *Id.* at 5. A more detailed discussion of the proposed management team's qualifications and compensation, the events leading to this bankruptcy case, the risks proposed to creditors by the Plan, and other information bearing on the potential success or failure of the Plan (such as the current state of the Debtor's industry) is essential for creditors to be able to assess the Plan's feasibility and other confirmation

issues.

(h) The Disclosure Statement does not provide sufficient information to enable creditors to determine whether the best interest of creditors test under Bankruptcy Code § 1129(a)(7) is satisfied. Under § 1129(a)(7), a creditor must either accept the plan or retain or receive, as of the effective date, property with a value that is not less than it would receive or retain were the debtor liquidated in Chapter 7. First, the obvious uncertainty relating to the balloon payment / refinancing proposal makes it impossible to determine whether Associated Bank would receive or retain property on the effective date that is at least as valuable as the Bank would receive in a Chapter 7 liquidation.

(i) Second, the Disclosure Statement's liquidation analysis is inadequate. *Id.* at 12 and Exhibit B. Exhibit B provides that, as of December 20, 2017, the Debtor's accounts receivables were $2,600,000, but maintains that the value of receivables would decline to $1,400,000 upon liquidation due to customer counterclaims. There is no description of the customer counterclaims that might arise upon liquidation or the potential amount of such counterclaims. Exhibit B provides that the book value of the Debtor's machinery and equipment is $10,400,000 but states that the liquidation value of such machinery and equipment would be only $2,800,000. Other than to state that the machinery and equipment is old and difficult to move, there is no explanation as to how this deeply discounted valuation was determined. Exhibit B states that the book value of inventory is $2,000,000 but only has a 10% liquidation value of $200,000. Exhibit B provides only that the 90% discounted liquidation value is based on management's knowledge of inventory liquidation values in the industry. While the Debtor's real estate has a book value of $366,000, Exhibit B provides that its liquidation value is only $130,000 due to the fact that it is located in an economically depressed area. Without further information

about the real estate market in the area, including prices for comparable sales in the area, there is no way for creditors to know if the Debtor's valuation of the real estate is reasonable. In addition, the liquidation analysis fails to include realization from the sale of Keyman insurance that is part of Associated Bank's collateral. (*See* Disclosure Statement at 6, fn. 1.) For all of these reasons, the liquidation analysis must contain greater detail on how liquidation values were arrived at for creditors to determine whether the Plan satisfies the best interest of creditors test.

(j) The Disclosure Statement provides for the cancellation of existing equity and the issuance and sale of new equity in the reorganized debtor. The sale of new equity would be accomplished through an auction process, with the initial bid being a collective bid by the proposed management team in the amount of $60,000. However, the Disclosure Statement does not identify how many shares in the reorganized debtor will be issued and sold. Nor does the Disclosure Statement explain how the initial bid was arrived at and how such bid amount would provide sufficient new value or otherwise satisfy the absolute priority rule under Bankruptcy Code § 1129(b) in the event that cramdown is necessary. The Disclosure Statement further provides that the notice of the stock sale will be published at least fourteen days prior to the confirmation hearing and that prospective bidders must submit notice of their prospective bids at least seven days before the confirmation hearing. There is, however, no explanation as to whether the Debtor will undertake any marketing efforts with respect to the sale of new stock, what those marketing efforts might be, or how a period of approximately seven days could possibly provide for a reasonable marketing process designed to maximize the sale value of new stock in the reorganized debtor. Also unexplained is why a longer, more robust marketing process for the stock sale would in any way be detrimental to the Debtor and its estate. Lastly, the Disclosure Statement implies that the winning bidder for the new stock would be required to retain the Debtor's existing

management team. There is no explanation as to why a third party who successfully acquires the stock in the reorganized debtor should be required to retain existing management, particularly when there are apparently no employment contracts in place with existing management (*See* Disclosure Statement at 4 – providing that the Debtor is not a party to any executory contracts). For all of these reasons, the Disclosure Statements description of the auction process for the new stock is inadequate.

(k)     The Disclosure Statement is unclear with respect to the Debtor's current ownership. On page 5, the Disclosure Statement provides that Richard Tribble currently owns 100% of the Debtor. On page 9, however, the Disclosure Statement provides that the Debtor's "current owner and management team consists of" Bill Klaczynski, Bob Pollmann, Ron Wolf, Fred Schrantz, Peter Jaworowski and Virginia Morgan.

(l)     On Page 8, the Disclosure Statement states that any objection to the allowance of claims or interests must be brought within 120 days of confirmation, unless such deadline is extended by order of this Court. The Disclosure Statement then provides that "cause" shall not be a requirement for an extension of this deadline. The Debtor should explain why "cause" should not apply to requests for such an extension and what the standard should be.

(m)     On page 11, the Disclosure Statement provides that allowed claims arising out of the rejection of an executory contract or unexpired lease will be treated as Class 3 claims. Such claims should be treated as Class 4 general unsecured claims as Class 3 consists only of the secured claims of Ford Motor Credit.

(n)     The Disclosure Statement provides that the reorganized debtor "will have the right to make any distribution to creditors earlier than required by the Plan." *Id.* at 11. It is unclear whether this would enable the reorganized debtor to provide earlier payments, and thus

more favorable treatment, to certain creditors in violation of Bankruptcy Code § 1122(a).

      (o)    The Disclosure Statement provides that the Debtor will have the power and authority, post-confirmation, "to commence any preference, fraudulent conveyance, or other litigation that it deems appropriate. (Disclosure Statement at 11-12.) The Debtor adds that it does not believe any such litigation claims exist. *Id.* at 12, fn. 4. The Disclosure Statement should explain what, if any, analysis was conducted by the Debtor when examining whether any payments made within the applicable time periods are potentially subject to avoidance as preferential or fraudulent transfers.

      (p)    The Disclosure Statement's description of the Court's post-confirmation jurisdiction is unclear. On pages 11 and 12, it states that this Court will retain post-confirmation jurisdiction for specified purposes, that the Debtor will have the right to bring post-confirmation avoidance actions that it deems appropriate, and that the Court shall retain jurisdiction for such litigation. (Disclosure Statement at 11-12.) This is not an adequate description of the Court's post-confirmation jurisdiction given the retention of jurisdiction of language contained in the Plan. Article 9.1 of the Plan provides that this Court "shall retain <u>exclusive jurisdiction</u> over matters arising out of, or related to the Chapter 11 Case and this Plan . . ." *Id.* at 24 (emphasis added). Despite the exclusive jurisdiction language, however, Article 9.3 provides that the Debtor shall have absolute discretion "to bring an action in any other forum" and that Article 9.1 shall have no effect upon and shall not limit any other court's exercise of jurisdiction over a matter otherwise falling within the scope of Article 9.1. Both the Disclosure Statement and Plan should clearly articulate those matters over which this Court would retain exclusive jurisdiction, those matters over which it would retain non-exclusive jurisdiction, and those matters over which it would retain no jurisdiction.

(q)     Lastly, the Disclosure Statement states simply that "[t]he Plan is also fair." (<u>Disclosure Statement</u> at 13.)  The Disclosure Statement must contain a more robust discussion of how, in the event cramdown, the Plan satisfies the requirement under Bankruptcy Code § 1129(b)(1) that "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).

12.     For the reasons set forth above, the Court should deny approval of the Debtor's Disclosure Statement.

WHEREFORE, Associated Bank, N.A. respectfully requests that the Court deny the Debtor's request to approve the Disclosure Statement and grant such other and further relief as the Court deems just and proper.

Dated: January 30, 2018                             Respectfully submitted,

                                                    ASSOCIATED BANK, N.A.


                                                    By: */s/ Bryan E. Minier*
                                                         One of Its Attorneys

Lathrop Gage, LLP
Bryan E. Minier (6275534)
155 N. Wacker Drive, 30th Floor
Chicago, IL  60606
Phone: (312) 920-3300
Fax: (312) 920-3301
bminier@lathropgage.com