UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 17-05206 |
| ANDERSON SHUMAKER COMPANY, | ) | Chapter 11 |
| | ) | Judge Cassling |
| debtor/debtor in possession. | ) | |

## DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION

**DEBTOR'S COUNSEL**
Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 17-05206 |
| ANDERSON SHUMAKER COMPANY, | ) | Chapter 11 |
| | ) | Judge Cassling |
| debtor/debtor in possession. | ) | |

## DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION[1]

ANDERSON SHUMAKER COMPANY, an Illinois corporation, debtor/debtor-in-possession herein ("Debtor"), proposes the following First Amended Plan of Liquidation ("Plan") pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 1101 *et seq.*

## ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

A.    Scope of Definitions.  For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

ALL TERMS USED IN THIS PLAN WHICH ARE NOT EXPRESSLY DEFINED HEREIN SHALL HAVE THE RESPECTIVE MEANINGS GIVEN SUCH TERMS IN § 101 OF THE BANKRUPTCY CODE OR AS OTHERWISE DEFINED IN APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE OR THE BANKRUPTCY RULES OF PROCEDURE.

---

[1] The amendments to the Plan reflect the Debtor's intention to sell its assets pursuant to Section 363 of the Bankruptcy Code, utilizing the mechanism of the Plan.  The Debtor's original Plan of Reorganization was filed on December 27, 2017.

B.    **Definitions**.

1.1.    **Administrative Claim** means a Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to § 503(b) and § 507(a)(1) of the Bankruptcy Code, including, without limitation:

    (a)    any actual and necessary costs and expenses of preserving the Debtor's Estate and of operating the Debtor's business from and after the Petition Date, including post-Confirmation Date expenses; and

    (b)    all compensation and reimbursement of costs and expenses to professionals consistent with any professional fee order to the extent allowed by the Court; and

    (c)    any fees due to the United States Trustee assessed against the Debtor's Estate under 28 U.S.C. §1930(a)(6) as of the Confirmation Date.

1.2.    **Allowed** means where referenced to any Claim or Equity Interest, (a) any Claim against, or Equity Interest in, the Debtors which has been listed by the Debtors in good faith in their Schedules, as such Schedules may be amended by the Debtors from time to time, in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed (*i.e.*, not subject to a bona fide dispute) or contingent and for which no contrary proof of Claim or Equity Interest has been filed, (b) any Claim or Equity Interest allowed by a Final Order of the Bankruptcy Court, or (c) any Claim or Equity Interest which is not Disputed, or any Disputed Claim or Equity Interest as to which the liability of the in amount thereof are determined by a Final Order;  provided, however, that any Claim or Equity Interest allowed solely for the purpose of voting to accept or reject the Plan pursuant to a Final Order of the Bankruptcy Court shall not be considered an "Allowed Claim" or

"Allowed Equity Interest" hereunder (and particularly for treatment under the Plan of Reorganization, including distributions of dividends or other property).

1.3.   **ASC** means Anderson Shumaker Company, Debtor.

1.4.   **Avoidance Actions** means Causes of Action against a person arising under any of §§ 502, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related or similar state or federal statutes and common law, including without limitation fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions.

1.5.   **Ballot** means each of the ballot forms that are distributed to Claimants or Interest Holders who are included in a Class that is entitled to vote to accept or reject the Plan.

1.6.   **Bank** means Associated Bank, the Debtor's primary secured lender.

1.7.   **Bar Date** means the deadline for filing all proofs of claim or interest established by the Bankruptcy Court in the Bar Date Order, which is May 22, 2017.

1.8.   **Bar Date Order** means that certain order entered by the Bankruptcy Court which established the Bar Date.

1.9.   **Business Day** means Monday through Friday, but excluding any legal holiday as identified in Bankruptcy Rule 9006.

1.10.   **Business Premises** means the real property owned by the Debtor located at 824 S. Central, Chicago, Illinois.

1.11.   **Carve Out** means the unpaid fees of the Office of the United States Trustee, and the aggregate allowed unpaid fees and expenses payable under Sections 330 and 331 of the Bankruptcy Code to professional persons, retained pursuant to Court Order,

all other allowed Administrative Claims, and the General Unsecured Claim Fund; provided, however, in no event shall the General Unsecured Claim Fund be used for any purpose other than the payment of Holders of allowed Class 5 Claims.

1.12. **Cash** means legal tender of the United States.

1.13. **Causes of Action** means all claims and causes of action of the Debtor its Estate as of the Effective Date, whether arising under any contract, tort, the Bankruptcy Code, or other federal or state law, including, but not limited to, Avoidance Actions, all litigation pending in any jurisdiction in which the Debtor is a plaintiff, defendant or other party, all claims and causes of action asserted by the Committee and all other adversary proceedings and lawsuits, together with all products and proceeds thereof.

1.14. **Chapter 11 Case** means the Chapter 11 case of Debtor pending in the Bankruptcy Court.

1.15. **Claim** means a claim against Debtor, whether or not asserted, as defined in §101(5) of the Bankruptcy Code.

1.16. **Claimant** means the Holder of a Claim.

1.17. **Claims Objection Deadline** means that day which is 90 days after the Effective Date, as the same may be from time to time extended by the Bankruptcy Court, without further notice to parties in interest.

1.18. **Class** means a category of Claims or Interests which are substantially similar to the other Claims or Interest in such Class, as described in Article II of the Plan.

1.19. **Committee** means the Official Committee of Unsecured Creditors of Anderson Shumaker Company.

1.20. **Confirmation Date** means the date of the entry of the Confirmation Order.

1.21. **Confirmation Order** means the order entered by the Court confirming the Plan in accordance with § 1129 of the Bankruptcy Code.

1.22. **Constellation** means Constellation Energy Services, a supplier of utility services to the Debtor pursuant to an executory contract.

1.23. **Cure** means the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to §365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.24. **Debtor** means Anderson Shumaker Company, as debtor and debtor-in-possession herein in the case pending in the Bankruptcy Court.

1.25. **Disallowed Claim** means a Claim or any portion thereof that (a) has been disallowed by a Final Order; (b) is Scheduled at zero (0), or has been Scheduled as unknown, or as contingent, disputed or unliquidated and as to which a Bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or c) is not scheduled and as to which a Bar Date has been set but no proof of claim has been timely filed or deemed timely filed or deemed timely filed with the Bankruptcy Court pursuant to

either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.26. **Disbursing Agent** means the Debtor, or any Person designated by the Debtor, in its sole discretion, to serve as a disbursing agent under Section 10.3 of the Plan.

1.27. **Disclosure Statement** means the written disclosure statement that relates to this Plan, prepared pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.28. **Disputed Claim** means a Claim or any portion thereof that is neither an Allowed Claim nor a disallowed Claim, as the case may be, and includes, without limitation, Claims that (a)(1) have not been Scheduled by Debtor or have been Scheduled by the Debtor or have been Scheduled at zero, as unknown or a contingent, unliquidated or disputed and (ii) are not the subject of an objection in the Bankruptcy Court (b) are the subject of a proof of claim that differs in nature, amount or priority from the Debtor's Schedules, or c) are the subject of an objection with the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.29. **Effective Date** means that date upon which the Sale closes; provided, however, that the Sale shall not close until after the Confirmation Order becomes a Final Order.

1.30. **Equity Interests** means an ownership interest in the Debtor.

1.31. **Estate** means the bankruptcy estate of Debtor created pursuant to §541 of the Bankruptcy Code.

1.32.   **Exhibit** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

1.33.   **Final Order** means an order of the Bankruptcy Court that has not been reversed, modified, amended or stayed, and the time for appeal to seek review, *certiorari* or rehearing of which has expired and as to which no appeal, review or rehearing is pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.34.   **General Unsecured Claim** means a Claim that does not fall within another Class of Claims.

1.35.   **General Unsecured Claim Fund** means $143,000.00 that shall be set aside from the proceeds of the Sale and used solely to pay Holders of Allowed Class 5 Claims.

1.36.   **Holder** means any Person holding a Claim or Interest.

1.37.   **Impaired** means any Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.38.   **Interest** means (a) the legal, equitable, contractual and other rights (whether filed or contingent, matured or unmatured, disputed or undisputed) of any Person with respect to voting stock, non-voting stock, or any other equity securities of debtor and (b) the legal, equitable, contractual, and other rights (whether fixed or contingent, matured or unmatured, disputed or undisputed) of any Person to purchase, sell, subscribe to, or otherwise acquire or receive (directly or indirectly) any of the foregoing.

1.39.   **Interest Holder** means the Holder of an Interest.

1.40. **Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code, or other entity.

1.41. **Persons Entitled to Notice** means those Persons who file and serve, with the Bankruptcy Court, a notice of appearance and demand for service of process dated subsequent to the Petition Date and prior to the Confirmation Date.

1.42. **Petition Date** means the date the Chapter 11 Case was filed with the Bankruptcy Court, February 23, 2017.

1.43. **Plan** means this Plan of Liquidation as it may be amended or modified and all Exhibits, schedules or attachments filed herewith or which may be hereinafter submitted.

1.44. **Priority Claim** shall mean a Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to § 507(a) of the Bankruptcy Code.

1.45. **Priority Tax Claim** means a Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

1.46. **Professional Claim** means a Claim of a professional retained in the Chapter 11 Case pursuant to §§ 327 and 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services rendered or expenses incurred on or after the Petition Date and prior to and including the Effective Date.

1.47. **Pro Rata** means with respect to the Holder of any Claim, the same proportion that the amount of the Allowed Claim of such Holder in any Class of Claims

described in Article II bears to the aggregate amount of all Claims in such Class, including in such aggregate amount both the allowed Claims and all Disputed Claims as of the date of any payment made pursuant to this Plan.

1.48. **Reclamation Claim** means a Claim pursuant to § 503(b)(9) of the Bankruptcy Code.

1.49. **Retained Actions** means (a) all claims, rights of action, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, which Debtor may hold against any Person, including, but not limited to, any Causes of Action brought prior to the Petition Date, and actions against any Persons for failure to pay for products or services provided or rendered by Debtor, (b) all claims, Causes of Action, suits, and proceedings relating to strict enforcement or Debtor's intellectual property rights, including patents, copyrights, and trademarks, and (c) all claims or Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor's business.

1.50. **Sale** means the sale of the Debtor's assets pursuant to § 363 of the Bankruptcy Code.

1.51. **Scheduled** means, with respect to any Claim or Interest, the status, priority and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.52. **Secured Claim** means a Claim secured by a security interest in or lien on property of the Estate to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claimant's interest in the Estate's interest in property of the Estate as determined by a Final Order of the Bankruptcy Court

pursuant to § 506 of the Bankruptcy Code or as otherwise agreed upon in writing by Debtor and the Claimant.

1.53. **Setoff Claim** means an Allowed Claim subject to setoff under § 553 of the Bankruptcy Code but does not include any Claim where the claimant has waived, released, terminated, relinquished or abandoned its setoff rights by contract or otherwise.

1.54. **Unimpaired** refers to any claim or Interest which is not Impaired.

C.     **Rules of Interpretation**.  For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or Exhibit filed or to be filed means such documents or Exhibit as it may have been amended, modified or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (d) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

D.     **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Debtor's Plan contemplates a Sale of assets pursuant to Section 363 of the Bankruptcy Code.

Payment to the Bank, currently owed approximately $11.1 million, will be made, subject to the Carve Out, out of the proceeds of the sale.  It is unlikely the Bank's claim will be paid in full.  The unpaid real estate taxes owed to the Cook County Treasurer and the Secured Claim of the City of Chicago will be paid out of the sale of the Business Premises.

Payment to general unsecured creditors of $143,000.00, representing approximately six and one half percent (6.5%) of their claims, totaling approximately $2,200,000, will be made from the General Unsecured Creditors Fund.

Pursuant to § 1121 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class for purposes of voting on the Plan and of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests against the Debtor of any nature whatsoever, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Debtor or rejection of leases or executory contracts, whether resulting in an Allowed Claim or not, and all Interests arising from the ownership of the Debtor, shall be bound by the provisions of the Plan.

-11-

The Claims and Interest are hereby classified as follows:

2.1    Administrative Claims (Unclassified)

2.2    Class 1 – Bank Secured Claim

2.3    Class 2 – Secured Claim of the Cook County Treasurer for unpaid real estate taxes for the property owned by the Debtor located at 824 S. Central, Chicago, Illinois.

2.4    Class 3 – Secured Claim (statutory lien) of the City of Chicago for utility billing in the amount of $3,365.36.

2.5    Class 4 – Secured Claim of Ford Motor Credit

2.6    Class 5 – General Unsecured Claims

2.7    Class 6 – Equity Interest of Richard Tribble

## ARTICLE III

## ADMINISTRATIVE AND PRIORITY CLAIMS

3.1    Unclassified Claims.  Pursuant to § 1123 of the Bankruptcy Code, a plan must classify all claims into one or more classes, except for certain claims entitled to priority.  Section 1123 further provides that only those claims that are substantially similar may be placed in the same Class.  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, and the treatment of such unclassified Claims is set forth immediately below.  Generally, an Administrative Expense Claim is a Claim that arises after the bankruptcy filing in favor of a creditor who has provided goods or services to a debtor while it is in bankruptcy.  A Priority Tax Claim is an unsecured claim arising in favor of a taxing authority that is entitled to priority treatment under § 507(a)(8) of the Bankruptcy Code.

3.2    *Treatment of Unclassified Claims*

3.2.1   *Administrative Expense Claims.*

-12-

3.2.1.1 <u>Other than Professionals</u>.  Except to the extent that any person or entity entitled to payment of any Allowed Administrative Expense Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Expense Claim that is not a Professional Fee Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the Effective Date or if it is allowed later, within thirty (30) days after the Claim becomes an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor-in-Possession or liabilities arising under loans or advances to, or other obligations incurred by, the Debtor-in-Possession, to the extent authorized and approved by the Bankruptcy Court pursuant to a Final Order, if such authorization  and approval was required under the Bankruptcy Code, shall be paid (and performed, if a contractual obligation) by Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreement governing, instruments evidencing or other documents relating to such transactions.  To the extent that the Debtor-in-Possession has incurred trade accounts payable (or similar obligations) in the ordinary course of business, these debts will be satisfied and paid by the Debtor after Confirmation in full and in the same manner as the Debtor-in-Possession prior to Confirmation.  Thus, any liability properly and legally incurred in the ordinary course of business by the Debtor-in-Possession which becomes an Allowed Administrative Claim shall be paid by the Debtor in accordance with the same terms, conditions, and practices as the Debtor-in-Possession.

3.2.1.2  <u>Professional Fee Claims</u>.  All Professional Fee Claims shall be paid in cash in full out of the Carve Out within seven (7) days of the entry of an order approving such Professional Fee Claims.  The law firm of Crane, Simon, Clar & Dan[2] as bankruptcy counsel; Freeborn & Peters, counsel for the Official Unsecured Creditors' Committee, RSM US, LLP ("RSM"), the Debtor's duly employed accountants[3] and Fort Dearborn Partners ("FDP"), the Debtor's duly employed financial advisors,[4] currently comprise the universe of professionals (collectively, the "Professionals").  It is anticipated the sum of the Professionals' fee claims will be approximately $180,000.00.  The Debtor estimates Professional Fee Claims at Confirmation as follows:[5]

| Name | Amount |
|------|--------|
| Crane, Simon, Clar & Dan | $65,000 |
| Freeborn & Peters (Creditors' Committee Counsel) | $80,000 |
| RSM | $25,000[6] |
| FDP | $10,000[7] |
| **Total** | **$180,000** |

3.2.1.3  <u>Statutory Fees Due the United States Trustee</u>.  Pursuant to 28 U.S.C. §1930(a)(6), the statutory fees of the United States Trustee shall be paid in Cash as such fees become due and payable before (and to the extent owed, after) Confirmation in full on the Effective Date.

---

[2] Formerly Crane, Heyman, Simon, Welch & Clar.

[3] RSM has been employed for purposes of the Debtor's early audit, which may not be necessary.
[4] FDP has been paid on a weekly basis throughout the Debtor's Chapter 11 case, and received a retainer.
[5] The amounts shown are estimates, and no fees will be paid unless and until Court Orders are entered approving said fees.
[6] RSM will only be owed, if the Debtor requires an audit.
[7] FDP will likely be owed less than is shown above because FDP has been paid on a weekly basis.

3.2.1.3   Administrative Claims for Reclamation by vendors under Section 503(b)(9) of the Bankruptcy Code ("Reclamation Claims").  The sole Reclamation Claim against the Debtor is held by Ellwood Quality Steels ("EQS") and Ellwood National Steel Company ("ENS"), in the aggregate amount of $77,052.90, pursuant to the Stipulation and Agreed Order for Allowance of Administrative Expenses Claim of EQS and ENS entered by this Court on August 28, 2017.

3.3   *Deadline for Filing Administrative Expense Claims*.   Except as otherwise provided by any Order of the Bankruptcy Court or this Plan, the deadline for any Entity to assert an Administrative Expense Claim entitled to priority under § 507(a) of the Bankruptcy Code shall be 30 days after the entry of the Confirmation Order (the "Administrative Expense Claim Deadline").   Any Administrative Claim not filed by the Administrative Expense Claim Deadline shall be deemed untimely and shall not be entitled to a distribution under the Plan.

## ARTICLE IV

### DESIGNATION OF CLASSES OF CLAIMS
### AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

Classes 1 and 5 are impaired.

## ARTICLE V

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.1   *Classification of Claims and Interests*.  This classification of Claims is made for purposes of voting on the Plan, for making distributions thereunder, and for ease of administration thereof. Claims and Equity Interests are divided in Classes set forth below. A Claim or Equity Interest will be placed in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class, and may be in a different Class to

the extent that the remainder of the Claim or Interest qualifies within the description of such different Class.  A Claim or Interest will be entitled to the treatment accorded a particular Class only to the extent that such Claim or Interest is finally Allowed.

5.2    *Classes*.  For purposes of this Plan, those Entities holding Claims against or Equity Interests in the Debtor are grouped and shall be treated as follows:

5.3    *Classification of Claims*.  Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan as follows:

5.4    Class 1 – Associated Bank.  Class 1 consists of the Allowed aggregate Secured Claim of the Bank in the approximate amount of $11,000,000.00 (the "Bank Claim").  The Bank Claim shall be paid, to the extent of the sale proceeds, less the Carve Out, after sale of the Debtor's assets.[8]  To the extent not paid in full from the Sale, the Bank shall not share in any portion of the General Unsecured Claim Fund.

5.5    Class 2 – Secured Claim of the Cook County Treasurer.  Class 2 consists of the secured claim of the Cook County Treasurer in the approximate pre-petition amount of $130,000 for unpaid real estate taxes for the Business Premises (the "Real Estate Taxes").  The Real Estate Taxes shall be repaid in full out of the Carve Out.

5.6    Class 3 – Secured Claim of the City of Chicago for water service to the Business Premises to be paid from the proceeds of sale of the Business Premises.

5.7    Class 4 - Secured Claim of Ford Motor Credit Company ("FMCC") attaching to a 2014 Ford F450 ("Vehicle") will be continue to be paid according to the terms of the

---

[8] Based upon a hypothetical sale price of $4,500,000, for example, the Bank, after payment of the Carve Out, would receive approximately $5,200,000.  The Bank will also receive the Debtor's cash (currently approximately $500,000) and cash surrender of the Debtor's "keyman" life insurance policies (approximately $470,000).

loan documents between the Debtor and FMCC, unless the successful bidder for the Debtor's assets does not want the vehicle, in which case, the Vehicle will be returned to FMCC.

5.8    Class 5 – General Unsecured Claims – Allowed Claims of general unsecured creditors in the amount of approximately $2,200,000.00 will be paid their pro rata share of the General Unsecured Claim Fund.

5.9    Class 6 – Interest of Richard Tribble.   The Allowed Class 6 Interest of Richard Tribble will be cancelled as of confirmation.

On the Effective Date, all certificates evidencing existing securities or interests shall be surrendered by the holder(s) thereof to the Debtor (and deemed cancelled without any further action whether or not surrendered.

### ARTICLE VI

### MEANS FOR IMPLEMENTATION
### OF THE PLAN FOR NON-GOVERNMENTAL CLAIMS

6.1    *Claims Bar Date.*   The Bankruptcy Court fixed May 22, 2017 for non-governmental claims, and August 22, 2017 for governmental claims as of the Bar Date. The Bar Date is effective as to all creditors and parties in interest asserting rights to payment except Administrative Claims.   The Debtor will bring any and all objections to claims within thirty (30) days of the Effective Date.

6.2    *Release and/or assignment of Causes of Action.*   On the Effective date, all rights, Claims, and Causes of Action of the Debtor, including, but not limited to, Claims and Causes of Action pursuant to §§ 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code shall be sold to the purchaser under the Sale.

6.3    *Payments*.  The Debtor shall not be required to move for authority to make payments pursuant to the Plan, but may from time to time, and in the best interest of the creditors seeks Orders from the Bankruptcy Court in aid of consummation.

## ARTICLE VII

## PROVISIONS FOR IMPLEMENTING THE PLAN

7.1    The Plan contemplates the Sale of substantially all of the Debtor's assets through a sale and auction process established through that certain order granting the Debtor's motion to establish sale procedures (the "Sale Procedures Order"), which is attached hereto as Exhibit [--].

7.2    *Continued Corporate Existence*.  Debtor shall continue to exist as a "shell corporation" after the Sale.

7.3    *Directors and Officers*.  The current directors and officers of the Debtor shall continue to serve in such capacities until the Date upon which the Confirmation Order is entered.

7.4    *Corporate Action*.  Each of the matters provided for under the Plan involving the business structure of the Debtor or action to be taken by or required of Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by equity holders, creditors, officers or directors of the Debtor.

7.5.    *Preservation of Causes of Action*.  All Causes of Action shall be sold to the purchaser of the assets under the Sale.

7.6     *Debtor as Estate Representative*.  The Debtor is appointed, pursuant to 11 U.S.C. § 1123(b)(3)(B), as of the Effective Date, as the official designated representative of the Estate to enforce any claim or interest belonging to the Debtor or the Estate.

7.7     *Exclusivity Period*.  Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

7.8     *No Dissolution*.  Nothing contained herein or affecting these proceedings, including a lapse in or cessation of business operations, or a change of business purpose, or of the owners of the stock of the Debtor, shall cause or shall be deemed to cause any involuntary dissolution of the Debtor's business unless such dissolution is required as a matter of law.

7.9     *Effectuating Documents; Further Transactions*.  The current COO shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.10    *Limited Continuance of Unsecured Creditors Committee*.  As of the Effective Date, the Committee shall cease to exist, and the employment of all professionals retained by the Committee shall be deemed terminated.

## ARTICLE VIII

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    *Rejected Contracts and Leases*.    Any and all executory contracts and unexpired leases of the Debtor that have not been assumed or rejected prior to the Confirmation Date shall be deemed rejected on the Confirmation Date.[9]

8.2    *Rejection Claim*.    For any executory contract or unexpired lease that is rejected and results in a claim, such claim shall be forever barred and shall not be enforceable against the Debtor or such entities' properties unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served on counsel for the Debtor within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order, or (b) other notice that the executory contract or unexpired leases has been rejected. Any such claim for rejected executory contracts or unexpired lease shall be treated as a Class 5 Claim to the extent of its allowance.

## ARTICLE IX

### RETENTION OF JURISDICTION

9.1    *Jurisdiction of Bankruptcy Court*.    The Court shall retain exclusive jurisdiction over matters arising under, arising out of, or related to, the Chapter 11 Case and this Plan pursuant to the provisions of the Bankruptcy Code until the proceedings are closed, for, among other things, the following purposes:

(a)    To classify, allow or disallow Claims and direct distributions of funds under the Plan and to adjudicate all controversies concerning classification or allowance of any Claim or interest;

---

[9] The Debtor's only known executory contracts are vehicle leases with Cab West, LLC and the utility contract with Constellation.

-20-

(b)     To adjudicate any and all disputes arising from distributions under the Plan, and to ensure that distributions to Allowed Claim holders and Allowed Interest holders are accomplished as provided in the Plan;

(c)     To enforce performance of the Plan or any provisions thereof;

(d)     To hear and determine all Claims arising from the assumption or rejection of executory contracts and unexpired leases, and to consummate the assumption or rejection and termination thereof;

(e)     To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims;

(f)     To adjudicate all Claims to an ownership interest in any property of the Debtor or of the estate or any proceeds thereof.

(g)     To adjudicate all Claims or controversies arising out of the purchases, sales or contracts made or undertaken by the Debtor during the pendency of the proceedings;

(h)     To enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(i)     To issue orders in aid of execution, implementation, or consummation of the Plan;

(j)     To consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation, the Confirmation Order;

(k)     To hear and determine all applications for compensation and reimbursement of professional Claims under the Plan or under §§ 330, 331, 503(n), 1103, and 1129(a)(4) of the Bankruptcy Code;

(l)     To determine requests for the payment of Claims entitled to priority under §507(a)(1) of the Bankruptcy Code, including compensation of an reimbursement of expenses of parties entitled thereto;

(m)     To recover all assets and properties of the Debtor wherever located;

(n)     To hear and determine matters concerning state, local and federal taxes pursuant to, *inter alia*, §§ 346, 505, 525 and 546 of the Bankruptcy Code.

(o)     To hear and determine all actions and proceedings brought by the debtor, arising in or relating to the Debtor's reorganization case or any issue arising under the Bankruptcy Code;

(p)     To determine the validity, extent and priority of all liens against property of the Debtor's estate;

(q)     To consider any modifications of the Plan pursuant to § 1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation as defined in § 1101(2) of the Bankruptcy Code;

(r)     To hear and determine all controversies, suits and disputes that may arise in connection with the interruption or enforcement of the Plan;

(s)     To hear any other matter not inconsistent with the Bankruptcy Code;

(t)     To hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(u)     To enter a final decree closing the Chapter 11 Case;

(v)     To enforce all orders previously entered by the Bankruptcy Court; and

(w)     To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.


9.3     *Abstention.*  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of these proceedings, including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this Article 9 shall have no effect upon and shall not control,, prohibit or limit the exercise of any jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE X

## PROVISIONS GOVERNING DISTRIBUTIONS

10.1 *Timing of Distributions*. Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under the Plan shall be made: (i) with respect to Classes 1, 2 and 3, on the Effective Date; and (ii) with respect to Class 6, within seven (7) days of the resolution of all objections to Claims.

10.2 *No Interest on Claims or Interests*. Unless otherwise specifically provided for in the Plan or Confirmation Order, interest shall not accrue or be paid on Claims after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim becomes an Allowed Claim.

10.3 *Disbursing Agent; Withholding*. The Debtor will be the Disbursing Agent.

10.3 *Claims Administration Responsibility*. Debtor will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions on all Claims against the Debtor, including but not limited to Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Secured Tax Claims, General Unsecured Claims, Reclamation Claims, and Interests.

10.5 *Delivery of Distributions*. Distributions on Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the proofs of claim filed by such Claimants (or at the last known addresses of such Claimant if no proof of claim is filed or if Debtor has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim, or (c) at the addresses reflected in the Schedules if no

proof of claim has been filed and the distribution is returned as undeliverable, no further distributions to such Claimant shall be made unless and until the Disbursing Agent is notified of such Claimant's then current address, at which time all missed distributions shall be made to such Claimant without interest. Amounts in respect of undeliverable distributions shall be returned to or held by Debtor until such distributions are claimed. All claims for undelivered distributions must be made on or before the third anniversary of the Effective Date. After such date, all unclaimed property shall revert to Debtor. Upon such reversion, the claim of any Claimant, or their successors, with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

10.6   *Procedures for Treating and Resolving Disputed and Contingent Claims.*

10.6.1 *No Distributions Pending Allowance.* No payment or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim. All objections to Claims must be filed on or before the Claims Objection Deadline.

10.6.2 *Distributions After Allowance.* Payments and distributions to each respective Claimant on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern distributions o such Claimant. Within ten (10) days of the date when a Disputed Claim becomes an undisputed, noncontingent and liquidated Allowed Claim, the Debtor will distribute to the Claimant any Cash that would have been distributed on the dates

-24-

distributions were previously made to Claim Holder had such Allowed Claim been an

Allowed Claim on such dates.

10.7  *De Minimis Distributions*.    The Disbursing Agent shall not have any

obligation to make a distribution on account of an Allowed Claim from any distribution

reserve or otherwise if the amount to be distributed to the specific Holder of the Allowed

Claim on the articular distribution date does not constitute a final distribution to such

holder and is or has a value of less than $100.00.

## ARTICLE XI

## EFFECT OF THE PLAN ON CLAIMS AND INTEREST

11.1  *Discharge of the Debtor*.  Pursuant to § 1141(d) of the Bankruptcy Code,

except as otherwise specifically provided in this Plan or in the Confirmation Order, the

distributions and rights that are provided in this Plan shall be in complete satisfaction,

discharge, and release, effective as of the Confirmation Date (but subject to the

occurrence of the Effective Date), of claims against, and Interests in, Debtor and Debtor,

and their assets or properties, regardless of whether any property shall have been

distributed or retained pursuant to the Plan on account of such Claims and Interests, and

all debts of the kind specified in §§ 502(g), 502(h) or 501(1) of the Bankruptcy Code, in

each case whether or not (i) a proof of claim or interest based upon such claim or Interest

is filed under § 501 of the Bankruptcy Code, (ii) a Claim or Interest accepted the Plan.

The Confirmation Order shall be a judicial determination of the discharge of all Claims

against and Interests in Debtor, subject to the Effective Date occurring.

11.2  *Compromises and Settlements*.  Pursuant to relevant law, including but not

limited to Bankruptcy Rule 9019(a), Debtor may compromise and settle any Claims (a)

against it and (b) that it has against other Persons.  Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and Claims that it may have against other Persons up to and including the Effective Date.  After the Effective Date, such right shall pass to the Debtor.

11.3   *Setoffs*.  Debtor may, but shall not be required to, set off against any Claim or Interest, and the payments or other distributions to be made pursuant to the plan in respect of such Claim or Interest, claims of any nature whatsoever that Debtor may have against such Claim Holder or Interest Holder; but neither the failure to do so nor the allowance of any claim or Interest hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Claim Holder or Interest Holder.

11.4   *Satisfaction of Subordination Rights*.   All Claims against Debtor and all rights and claims between or among Claim Holders relating in any manner whatsoever to distributions on account of Claims against or Interests in Debtor, based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Claim Holders having such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date.  Distributions to the various Classes of Claims and Interest hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claim Holder or Interest Holder by reason of any subordination rights or otherwise, so that each Claim Holder and Interest Holder shall have and receive the benefit of the distributions in the manner set forth in the Plan.

11.5  *Exculpation.*  Neither the Debtor, the Disbursing Agent, the Committee, the members of the Committee in their capacities as such, nor any of their respective members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents, and any of such parties' successors and assigns, shall have or incur, and are hereby released from any liability to any Claim Holder or Interest Holder, each other, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or any of their successors or assigns, for any act, event or omission occurring on or after the Petition Date, and which directly relates to, or arises out of, their conduct or action taken in connection with relating to, or arising out of Debtor's Chapter 1 Case, negotiation and filing of the Plan, dissemination of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration for the Plan or the property to be distributed under the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

11.7  *Injunction.*  Pursuant to Sections 105, 524, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons are precluded and enjoined from asserting against the Disbursing Agent or the Debtor, or their respective past or current officers, directors, employees, attorneys, and agents, or anyone for whom the Debtor, the Disbursing Agent or the Debtor or such officers, directors, employees, attorneys, and agents, or anyone for whom the Debtor, the Disbursing Agent

or the Debtor or such officers, directors, employees, attorneys, and agents may be legally responsible, or their respective assets or properties, (i) any lien, encumbrance, security interest, equity interest, or charge of any nature or description relating to the Debtor, the Chapter 11 Case, or affecting property of the Debtor's Estate or (ii) any Claim or any other liability relating to the Debtor, the Chapter 11 Case, or affecting property of the Debtor's Estate, whether known or unknown, discovered or undiscovered, latent or patent, scheduled or unscheduled, whether contingent, unliquidated or disputed, against the Debtor, the Disbursing Agent or the Debtor or its past or then current officers, directors, employees, attorney or agents based upon any condition, event, act, omission, occurrence, transaction or other activity or inactivity of any kind or nature that occurred, existed or failed to occur prior to the Effective Date, whether or not (a) a proof of Claim or Interest has been filed or is deemed to have been filed, (b) such Claim or Interest is allowed or (c) the Holder of such Claim or Interest has accepted the Plan, except as provided otherwise in the Plan.

Except as expressly provided in this Plan, or in the Confirmation Order, the satisfaction, release and discharge of Claims and Interests pursuant to this Plan shall also act as an injunction against any Person with respect to any Claim or Interest from (a) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decrees or order; (c) creating, perfecting or enforcing any encumbrance of any kind; and (d) asserting any defense or right of set off, subrogation or recoupment of any kind, against any and all of the following Persona: (i) the Debtor; (ii) the Debtor; (iii) the Disbursing Agent; and (iv) the past or

current officers, directors, employees, attorneys and agents of Debtor, or the Disbursing
agent.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1   *Binding Effect.*  The Plan shall be binding upon and inure to the benefit of
Debtor, all present and former Claim Holders, all present and former Interests Holder,
other parties in interest and their respective heirs, successors, and assigns.

12.2   *Modification and Amendments.*  Debtor may alter, amend, or modify the
Plan or any Exhibits thereto under § 112(a) of the Bankruptcy Code at any time prior to
the confirmation hearing.   After the Confirmation Date and prior to substantial
consummation of the Plan as defined in § 1101(2) of the Bankruptcy Code, Debtor may,
under § 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court
to remedy any defect or omission or reconcile any inconsistencies in the Plan, the
Disclosure Statement, or the Confirmation Order, and such matters as may be necessary
to carry out the purposes and effects of the Plan.

12.3   *Changes in Voting on Plan.*  The Holder of an Allowed Claim who has
accepted or rejected the Plan is deemed to have accepted or rejected the modified or
amended Plan unless, within such time as may be specified by the Court, the holder
changes its previous acceptance or rejection.

12.4   *Cramdown.*  In the event that this Plan is not confirmed under the provisions
of § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to confirm the plan, or
to seek confirmation under the provisions of § 1129(b) of the Bankruptcy Code.

12.5   *Revocation, Withdrawal, or Non-Consummation*.  Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If Debtor revokes or withdraws the Plan prior to the Effective Date, or if the Confirmation date or the Effective Date does not occur, then the Plan, any settlement, or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be null and void and of no force or effect.  In such event, nothing contained herein, and no acts take in preparation for consumption of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against, or Interests in, Debtor or any other Person, to prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor, or to constitute an admission of any sort by Debtor or any other person.

12.6   *Notices*.  Any notice required or permitted to be provided to Debtor, the Creditors Committee, or the Bank under the Plan, shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, (c) telecopy, receipt confirmed, or (d) overnight delivery service, to be addressed as follows:

If to Debtor:                         Scott R. Clar
                                      Crane, Simon, Clar & Dan
                                      135 S. LaSalle, #3705
                                      Chicago, IL 60603

If to the Creditors' Committee:       Shelly A. DeRousse
                                      Devon J. Eggert
                                      Freeborn & Peters LLP
                                      311 S. Wacker Dr., #300
                                      Chicago, IL 60606

If to Associated Bank:　　　　Bryan E. Minier
　　　　　　　　　　　　　　Lathrop & Gage LLP
　　　　　　　　　　　　　　155 N. Wacker Dr., 30th Floor
　　　　　　　　　　　　　　Chicago, IL 0606-1758

12.7　*Terms of Existing Injunctions or Stays.*　Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for tin eh  Chapter 11 Case under §§ 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.   The injunction provided in Section 11.8 shall survive Confirmation of the Plan and the Effective Date.

12.8　*Section 1146 Exception.*　Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of any security under the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

12.9　*Post-Effective date Fees and Expenses.*　From and after the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Debtor related to the implementation and consummation of the Plan that arise after the Effective Date.

12.10　*Governing Law.*　Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Illinois shall govern the construction and implementation of the Plan, any agreements, documents, and instruments executed in connection with the Plan, and corporate governance matters.

ANDERSON SHUMAKER COMPANY, an
Illinois corporation, debtor/debtor in possession

By:  /s/Scott R. Clar
          One of its attorneys

**<u>DEBTOR'S COUNSEL</u>**:
Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777
Mjo2\Anderson Shumaker\Plan - amd