UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 17-05206 |
| ANDERSON SHUMAKER COMPANY, ) | Chapter 11 |
| ) | Judge Cassling |
| debtor/debtor in possession. ) | |

### DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT

**DEBTOR'S COUNSEL**
Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: )
) Case No. 17-05206
ANDERSON SHUMAKER COMPANY, ) Chapter 11
) Judge Cassling
debtor/debtor in possession. )

## DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT

ANDERSON SHUMAKER COMPANY, an Illinois corporation, debtor/debtor-in-possession herein ("Debtor"), submits this First Amended Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code, and in conjunction with its First Amended Plan of Liquidation ("Plan"). A copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.

## INTRODUCTION

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 23, 2017 (the "Petition Date"). The Debtor has been operating its business and managing its financial affairs as a debtor-in-possession since the Petition Date. No trustee or examiner has been appointed. An Official Committee of Unsecured Creditors has been appointed to serve in this reorganization case (the "Committee"). The Debtor is located at 824 S. Central, Chicago, Illinois (the "Business Premises"). The Debtor owns the Business Premises. The Plan is being filed within the exclusive periods established under Sections 1121(b) and 1121(d) of the Bankruptcy Code and prior Orders of the Bankruptcy Court.[1]

---

[1] The Debtor's originally filed plan was a plan of reorganization.

-1-

The Debtor is an Illinois corporation that provides open die forgings and custom forgings in various shapes and finishes using stainless steel, aluminum, carbon steel and various grades of alloy steel, employing approximately forty-three (43) people. The proposed Plan contemplates paying a dividend to unsecured creditors as a result of the sale of the Debtor's assets, and the Carve Out, as that term is defined in the Plan within the confines of the Plan. The Debtor is currently negotiating a Letter of Intent with a prospective purchaser, with the participation of the Bank and the Committee.

The Debtor will either accept a "stalking horse" bid for its assets and then proceed to establish bidding procedures and, ultimately, an auction pursuant to Section 363 of the Bankruptcy Code, or the Debtor will continue to market its assets without a "stalking horse" bid, and proceed to an "open" auction, also pursuant to Sections 363 and, with respect to the Plan, Section 1129 of the Bankruptcy Code. The Debtor is currently negotiating a Letter of Intent ("LOI") and an Asset Purchase Agreement ("APA"). The APA will be included as an attachment to a motion to establish bidding procedures and to schedule an auction and a hearing to approve a sale of the Debtor's assets to the successful bidder at auction, or the "stalking horse bidder," if no higher qualifying bids are received.

## SUMMARY OF TREATMENT OF CLAIMS UNDER THE PLAN

The following is a chart showing the treatment of Claims and Interest under the Plan:

| Claimant | Treatment Under the Plan | Source of Funds |
|---|---|---|
| Class 1: Bank | Secured Claim of approximately $11,000,000 will be paid, less the Carve Out, out of Sale Proceeds | Pay down is realized from liquidation of "key man" life insurance policies (approximately $473,000.00) available |

| | | |
|---|---|---|
| | | cash, and sale proceeds, less the Carve Out. Bank will not be allowed to credit bid their debt at auction unless Bank agrees to pay the Carve Out, even if the successful bid for the Debtor's assets is the Bank's credit bid. Class 1 is impaired. |
| Class 2: Secured Claim of Cook County Treasurer for pre-petition real estate taxes attaching to real property located at 824 S. Central, Chicago, Illinois, utilized by the debtor in its business operations, and in the approximate amount of $130,000.00 | To be paid at closing of the sale of the Business Premises. Class 2 Claim is unimpaired. | Out of sale proceeds |
| Class 3: Secured Claim of City of Chicago in the amount of $3,365.36 | Will be paid in full out of the sale of the Business Premises | |
| Class 4: Secured Claim of Ford Motor Credit ("FMC") | If successful purchaser wishes to assume, Class 4 will be paid according to terms of contract. If not, then Class 4 claimant will potentially have an unsecured Class 5 Claim for the balance, if any, owed after return of the vehicle(s) subject to FMC's secured claim. | |
| Class 5: General Unsecured Claim other than Bank's Deficiency Claim, in the approximate amount of $2,200,000.00 | 6.5% distribution pursuant to agreement between the Bank and the Committee. Class 5 is impaired. | Carve Out |
| Class 6: Interest of Richard Tribble | The Class 6 Interest of Richard Tribble, consisting of 100% of the Shareholder interests in the Debtor, will be cancelled. Class 6 interest is impaired. | |

**Executory Contracts and Unexpired Leases**

The Debtor is a party to two (2) vehicle leases with Cab West, LLC (the "Vehicle Leases"), and a contract for utility service with Constellation.

Assumption means that the Debtor has elected to continue to perform the obligations under the contract or unexpired lease, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

The Debtor is unaware of any other executory contracts or unexpired leases. If a party objects to the rejection of an executory contract or unexpired lease or to the assumption of an executory contract or unexpired lease, the proposed cure of any defaults, or the adequacy of assurance of performance, they must file and serve their objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time. The decision as to whether or not to assume the Vehicle leases and Constellation executory contract, will be made by the successful purchaser of the Debtor's assets.

**The deadline for filing a proof of claim based upon a claim arising from the rejection of a lease or contract through the Plan will be thirty (30) days after the Effective Date**. Any claim based on the rejection of a contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise. The Debtor shall have thirty (30) after the filing of the proof of claim for rejection damages to object to the claim, if any.

**Risk Factors**

Certain risk factors are inherent in most commitments made pursuant to a Plan of Reorganization in a Chapter 11 case. If such plans are accepted, it is usually because

they represent a greater hope for returns and dividends than in a liquidating Chapter 7 case. Here, without the Carve-Out, unsecured creditors would receive no distribution.

## SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Plan has one (1) category of Administrative Claims, five (5) classes of creditors (Classes 1 through 5), and one (1) class of interest (Class 6). The Claims and Interests, and the treatments thereof under the Plan consist of the following:

**Class 1**: The Allowed aggregate Secured Claim of the Bank in the approximate amount of $11,000,000.00 (the "Bank Claim"). The Bank Claim shall be paid, to the extent of the Sale Proceeds, less the Carve Out, after sale of the Debtor's assets.

**Class 2**: The secured claim of the Cook County Treasurer in the approximate pre-petition amount of $130,000 for unpaid real estate taxes for the Business Premises (the "Real Estate Taxes"). The Real Estate Taxes shall be repaid in full out of the Carve Out.

**Class 3**: The Secured Claim of the City of Chicago in the amount of $3,365.56 will be paid in full out of the proceeds of the sale of the Business Premises.

**Class 4:** The Secured Claim of Ford Motor Credit Company ("FMCC") attaching to a 2014 Ford F450 ("Vehicle") will be continue to be paid according to the terms of the loan documents between the Debtor and FMCC in the event the successful purchaser of the Debtor's assets decides to continue using the Vehicle subject to the Class 4 Claim. If the successful purchaser does not assume the Class 4 claim, the vehicle(s) subject to the Class 4 Claim will either be returned to FMCC, or the loan assumed by the Debtor's employee(s) currently using the vehicle(s).

**Class 5**: Claims of general unsecured creditors, in the amount of approximately $2,200,000.00, will be paid a six and one-half percent (6.5%) distribution out of the Carve Out.

**Class 6**: The Allowed Class 5 Interest of Richard Tribble will be cancelled as of confirmation.

**Administrative Claims[2]**

Administrative Claims are provided for in Article II, Section 2.1 of the Plan, and consist of the Allowed Claim for fees and expenses of the law firm of Crane, Simon, Clar & Dan ("CSCD")[3], counsel for the Debtor, Freeborn & Peters ("F&P"), counsel for the Committee, RSM, LLC ("RSM"), the Debtor's tax counsel and Fort Dearborn Partners ("FDP"), the Debtor's financial advisor. The fees and expenses of CSCD are projected to be approximately $85,000.00 in excess of the pre-petition $75,000.00 retainer paid to CSCD, and an interim fee award in the approximate amount of $14,000.00.[4] RSM's fees are projected to be $4,000.00, although that figure may be zero (0) in the event an audit is unnecessary, or a less expensive alternative is adopted and FDP's fees $10,000.00. No professional shall be paid unless and until the Bankruptcy Court has entered appropriate orders allowing the compensation and reimbursement of expenses requested. The Administrative Claims under Sections 503(b)(9) and 546(c) of the Bankruptcy Code of Ellwood Quality Steel ("EQS") and Ellwood National Steel Company

---

[2] All amounts projected for professional fees are the Debtor's estimates and are, therefore, subject to change.

[3] CSCD was formerly known as, and was employed as Crane, Heyman, Simon, Welch & Clar.

[4] CSCD will be filing an interim application for allowance of fees and expenses prior to confirmation. In the event fees are allowed and paid pursuant to the second interim application, the amount owed to CSCD at Confirmation will be reduced accordingly.

("ENS") in the amount of $77,052.80 will also be paid after a sale of the Debtor's assets, out of the Carve Out.

**Claims Objection**

Except as otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, the Debtor shall file any and all objections to the allowance of claims or interests on or within 120 days of Confirmation of this Plan, unless extended by Order of the Bankruptcy Court. Cause shall not be a requirement for an extension of this deadline.

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and Interests in the Debtor who are entitled to vote their acceptance or rejection of the Plan. This Disclosure Statement is disseminated in connection with the solicitation of acceptances of the Plan filed by the Debtor. The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable investor, typical of the holder of Claims and Interests which are impaired under the Plan, to make an informed judgment about the Plan.

The information contained in this Disclosure Statement has been submitted by the Debtor, unless specifically stated to be from other sources. No representations concerning the Debtor of this Plan, other than those set forth in this Disclosure Statement, have been authorized by the Debtor. The Debtor believes that all of the information contained in this Disclosure Statement is accurate. However, the Debtor is unable to warrant that there are no inaccuracies.

**Under the Bankruptcy Code, a Class of Claims is considered to have accepted the Plan if both a majority in number and two-thirds (2/3) of the dollar**

amount of those actually voting vote to accept the Plan. The Claims of those who do not vote are not counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance. Acceptance by the statutory majority will bind the minority who dissent and those who fail to vote.

**The Plan requires that the holders of Allowed Claims in Classes 1 and 5 vote on Confirmation of the Plan.**

## HISTORY AND BACKGROUND

Anderson Shumaker Company is an ISO 9001-2008 certified open die forging company that started operations in 1902 and is located in Chicago, Illinois. The Debtor filed for bankruptcy in February 2017. However, the Debtor continues to generate new business and is expected to grow its revenues by 9.7% in 2017. In 2011, the Debtor invested $17,500,000.00, financed 100% with debt, to expand its manufacturing space by 26,000 square feet and install a Williams White 2,500 ton press that has a 16 foot pit below the press. The Debtor operates three steam driven hammers, two radial ring roller (150 and 300 ton) and a 2,500 ton hydraulic forging press. In addition to forging, the Debtor can also heat treat, machine, cut, hole bore and perform destructive and nondestructive testing.

In May 2016, Richard Tribble, owner, retired as president and Bill Klaczynski was promoted to president. Due to continuing operating losses and the inability to service its debts, the Debtor filed Chapter 11 bankruptcy in February 2017.

The Company's current management team consists of the following:

- Bill Klaczynski, President and COO
- Bob Pollmann, Controller and CFO
- Ron Wolf, Sales Manager
- Fred Schrantz, VP and Plant Manager

- Peter Jaworowki, VP and Process Engineering
- Virginia Morgan, Office Manager

The Company has 42 non-union employees of which 32 are in manufacturing, 4 in sales and 6 in executive/administrative.

Approximately 54% of sales are house accounts managed by company personnel. The Company relies on independent sale representatives for geographic coverage and the reps are paid a 5% commission on sales upon collection of accounts receivable. Sales commissions were temporarily reduced to 3% in February 2017 and will continue at that rate until December 31, 2017. Anderson Shumaker's customer base ranges in size and industry. In FY17, the Company's 5 largest customers represent approximately 34% of sales and operate in the oil/gas, aerospace and semiconductor industries. The Company has a typical customer concentration with the top 20 customers. In 2017, the top 20 customers comprised 60% of sales. YTD October 2017, the Company had orders from 275 different customers. The majority of customer orders are less than $3,000.00.

The Company owns and operates out of a facility that is over 100 years old and is located in an economically depressed location on the west side of Chicago. Although the majority of the equipment is old, it is well maintained and still relevant in today's forging environment.

Since the Petition Date, the Debtor has entered into eleven (11) consensual cash collateral orders with the Bank and have made nine (9) adequate protection payments to the Bank, each in the amount of $38,000.00.

## OTHER ASPECTS OF THE PLAN

The Debtor shall be the disbursing agent charged with making the payments required under the Plan to the holders of Allowed Claims. The source of funding of Class

5 unsecured creditors will be the Carve Out from the Sale proceeds. The Debtor will settle on a "stalking horse bidder," request the implementation of bidding proceedings and will schedule an auction, if any other "qualifying bids" are received.

Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest or otherwise enforcing its Claims against the Debtor and its assets in this bankruptcy case except as authorized in the Plan. Such injunction shall not affect any secured creditor's right to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under the Plan. This injunction will remain in effect until all distributions under the Plan have been made.

The Plan is self-executing. Upon payment as required by the Plan, any liens supporting such Claims shall be deemed released and discharged.

All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which have not been previously assumed, assigned, rejected or otherwise terminated by the Debtor shall be either assumed or projected within the Order entered by the Court selling the Debtor's assets. Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to the Plan must be filed on or within thirty (30) days following the rejection. Further, with respect to Claims for default relating to any unexpired lease or executory contract that is assumed pursuant to the Plan, any and all such claims must also be filed on or within thirty (30) days following Confirmation. Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 5 Claims. Allowed Claims for default emanating from the assumption of

unexpired leases and executory contracts will be treated as Administrative Claims. Any person failing to file such a Claim within the time provided in the Plan shall be forever barred from asserting such Claim and shall not receive any distribution under the Plan. The provisions for assumption, assignment and rejection shall be equally applicable to executory contracts and unexpired leases of real and personal property.

The Bankruptcy Court shall retain jurisdiction for certain specified purposes. Any distribution under the Plan that remains unclaimed sixty (60) days after the distribution is made will become property of the Debtor, and will not be recouped in subsequent distributions. The Debtor will have the right to make any distribution to creditors earlier than required by the Plan. The Bankruptcy Court shall retain jurisdiction for such litigation consisting of the Causes of Action.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest. Except as expressly provided in the Plan or the Bankruptcy Code, no interest or penalties accruing on or after February 17, 2016, shall be paid on any Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment. To the extent necessary, pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

## **LIQUIDATION ANALYSIS**

The Debtor is liquidating its assets, having tested the market for sale of its assets repeatedly since the Petition Date. A summary chart of parties who have either contacted

the Debtor or have contacted by the Debtor regarding the purchase of the Debtor's assets is attached hereto as **Exhibit B**.

In the event of a forced liquidation, any proceeds realized from liquidation of the Debtor's assets will first be used to pay the costs of collection, which for purposes of this discussion, the Debtor has estimated to be an amount equal to 10% of the gross collection proceeds. Once the costs of collection have been paid, only the Bank, the City of Chicago's Secured Claim and real estate taxes will be paid. Only after making the above disbursements of liquidation proceeds could any distribution be made to general unsecured creditors. In this case, the Debtor has secured claims in excess of $11,000,000.00, and collateral having an approximate liquidation value of $4,600,000.00 at best. A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit C**

Clearly, the dividend being paid to unsecured creditors under the Plan represents as much or more than such unsecured creditors would receive in a liquidation (which, according to the above analysis, is zero).

Accordingly, all creditors are receiving more than what they would receive in a liquidation.

## IMPLEMENTATION OF THE PLAN

As discussed throughout this Disclosure Statement, distributions under the Plan will be made from the sale of the Debtor's assets under the Plan.

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement as **Group Exhibit D** are the Debtor's 2016 tax returns, and attached as **Group Exhibit E** are the Debtor's corporate financial statements for 2015 and 2016. The purpose of these Exhibits is to provide creditors with

historical financial information. These balance sheets and income statements were prepared by the Debtor, and are based upon an analysis of actual business activity. The Debtor also attaches **Group Exhibit F**, consisting of the summary page of the Debtor's monthly reports filed since the Petition Date.

Attached as **Exhibit G** are the Debtor's five (5) year budget projections, representing reasonable calculations based upon historical projections of the Debtor's business.

The Debtor believes that the Plan represents an opportunity for the holders of Allowed Claims to receive substantially more than such claimants would receive in a forced liquidation. The Plan is also fair.

## RECOMMENDATION

The Debtor recommends that those persons entitled to vote, vote to accept the Plan.

          ANDERSON SHUMAKER COMPANY, an
          Illinois corporation, debtor/debtor in possession

          By: \s\Scott R. Clar
              One of its attorneys

**DEBTOR'S COUNSEL**:
Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Dan
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777
Mjo2\Anderson Shumaker\Disc Stmt - amd