UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-05206 |
| | ) | |
| ANDERSON SHUMAKER COMPANY, | ) | Chapter 11 |
| | ) | |
| debtor/debtor in possession | ) | Honorable Donald R. Cassling |

## NOTICE OF MOTION

TO: ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on **May 8, 2018 at 9:30 a.m.** or as soon thereafter as counsel can be heard, I shall appear before the Honorable Donald R. Cassling, Bankruptcy Judge, in the room usually occupied by him as courtroom 619 in the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or before any other Judge who may be sitting in his place and stead and shall present the **DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTOR'S ASSETS UNDER A PLAN OF LIQUIDATION; (B) SCHEDULING DATES FOR SALE OF DEBTOR'S ASSETS; (C) APPROVING BREAK-UP FEE; (D) APPROVING FORM OF ASSET PURCHASE AGREEMENT; AND (E) GRANTING RELATED RELIEF,** a copy of which is attached hereto and herewith served upon you, and shall pray for the entry of an Order in compliance therewith.

AT WHICH TIME and place you may appear if you so see fit.

/s/ Scott R. Clar
Crane, Simon, Clar & Dan
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777
sclar@craneheyman.com

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath deposes and states that he caused a copy of the foregoing Notice and attached Notice of Hearing and Motion to be served via the Court's Electronic Registration to all on the attached Service List, on the 3rd day of May, 2018.

/s/ Scott R. Clar

i

## SERVICE LIST

**Served Via Court's CM/ECF Registration**:

- **Fred L Alvarez**     falvarez@wwmlawyers.com, docket@wwmlawyers.com;mbeswick@wwmlawyers.com;Walker-ecfs_notice@juralaw.net
- **Scott R Clar**     sclar@craneheyman.com, mjoberhausen@craneheyman.com;asimon@craneheyman.com
- **Shelly A. DeRousse**     sderousse@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com
- **Devon J Eggert**     deggert@freeborn.com, bkdocketing@freeborn.com
- **Marc D Fine**     mdfine@jacksonkelly.com, jrtabor@jacksonkelly.com;spencer.tanner@jacksonkelly.com
- **Brian C Heck**     bheck@beckmanlawson.com
- **James Heiser**     heiser@chapman.com
- **David Paul Holtkamp**     David.Holtkamp2@cityofchicago.org
- **Elizabeth L Janczak**     ejanczak@freeborn.com, bkdocketing@freeborn.com
- **David L Kane**     dkane@cranesimon.com, jmunoz@craneheyman.com;jdan@cranesimon.com
- **Aaron M Krieger**     akrieger@chapman.com
- **Patrick S Layng**     USTPRegion11.ES.ECF@usdoj.gov
- **Bryan E. Minier**     bminier@lathropgage.com, mvargas@lathropgage.com;krodriguez@lathropgage.com
- **Kate O'Loughlin**     kate.oloughlin@sba.gov
- **Christopher H Purcell**     shermlaw13@aol.com
- **Rebecca D Ward**     ward@blankrome.com
- **Brian P Welch**     bwelch@burkelaw.com, gbalderas@burkelaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-05206 |
| | ) | |
| ANDERSON SHUMAKER COMPANY, | ) | Chapter 11 |
| | ) | |
| debtor/debtor in possession | ) | Honorable Donald R. Cassling |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING
BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF THE
DEBTOR'S ASSETS UNDER A PLAN OF LIQUIDATION; (B) SCHEDULING
DATES FOR SALE OF DEBTOR'S ASSETS; (C) APPROVING
BREAK-UP FEE; (D) APPROVING FORM OF ASSET PURCHASE
AGREEMENT; AND (E) GRANTING RELATED RELIEF**

ANDERSON SHUMAKER COMPANY, an Illinois corporation, debtor/debtor-in-possession ("Debtor"), by its attorneys, Scott R. Clar, David L. Kane and the firm of Crane, Simon, Clar & Dan, and in support of its Motion for Entry of an Order (A) Establishing Bidding Procedures in Connection with the Sale of Debtor's Assets under a Plan of Liquidation, (B) Scheduling Dates for Sale of Debtor's Assets; (C) Approving Breakup Fee; (D) Approving Form of Asset Purchase Agreement; and (E) Granting Related Relief,  pursuant to Sections 105, 363, 1123(a)(5)(D) and 1129 of the Bankruptcy Code, and Rules 6004(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Motion"), respectfully states as follows:

**Introduction**

1.      On February 23, 2017, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date").

2.      The Debtor has been operating its business and managing its financial affairs as debtor-in-possession since the Petition Date.  No trustee or examiner has been appointed.  An Official Committee of Unsecured Creditors ("Committee") has been appointed to serve in this

1

reorganization case, and has been actively involved in the Debtor's efforts to sell its assets pursuant to a Plan of Liquidation.

3.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This matter is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(M),(N) and (O).  The statutory bases for the relief requested herein are §§ 105(a), 363, 364, 1123(a)(5)(D) and 1129 of title 11, United States Code, and 11 U.S.C. §§101, *et. seq.* (as amended, the "Bankruptcy Code").

**Relevant Factual Background**

4.      The Debtor is an Illinois corporation that provides open die forgings and custom forgings in various shapes and finishes using stainless steel, aluminum, carbon steel and various grades of alloy steel.  The Debtor is located at 824 S. Central, Chicago, Illinois 60641 (the "Business Premises").  The Debtor owns the Business Premises.

5.      The Debtor employs forty three (43) people, including thirteen (13) salaried workers and thirty (30) non-union workers.

6.      The Debtor's assets consist of cash, accounts receivable, inventory, machinery and equipment, life insurance; cash surrender value and death benefits,[1] and intangible assets, including potential avoidance actions pursuant Section 550 *et seq.* of the Bankruptcy Code ("Avoidance Actions").

7.      The Debtor filed a plan of reorganization and disclosure statement on December 27, 2017.  The Debtor then filed, on March 2, 2018, an Amended Plan of Liquidation (the "Plan") and Amended Disclosure Statement to reflect a change in direction in the Debtor's

---

[1] The Debtor owns certain life insurance policies insuring the lives of several of its "key men."  Associated Bank (the "Bank"), the Debtor's primary secured lender asserts an assignment of collateral interest in each of the policies, as well as a security interest in all of the Debtor's assets except for the Avoidance Actions.  James Tribble, one of the insureds, recently passed away.  Under the First Amended Plan of Liquidation filed by the Debtor (the "Plan"), the Bank will be receiving both the cash surrender values of the other life insurance policies, and the death benefits resulting from James Tribble's passing, as well as proceeds of the sale of the Debtor's assets, less the Carve-Out, as that term is defined in the Plan.

Chapter 11 case from the Original Plan to a sale of assets pursuant to Sections 363 and 1129 of the Bankruptcy Code.  The Debtor has negotiated a "stalking horse bidder" for substantially all of its assets, pursuant to the Plan, and has obtained the approval of a proposed sale of its assets from the Committee and the Bank.

**Sale of Assets**

8.     The Debtor's efforts to sell its assets have resulted in a signed Letter of Intent from AS Forge Acquisition LLC ("<u>Buyer</u>") for the purchase price of $4.5 million, which has been negotiated and memorialized in an Asset Purchase Agreement between the Debtor and Buyer ("<u>Stalking Horse APA</u>").  A copy of the executed Stalking Horse APA is attached hereto as **Exhibit A**.

9.     Buyer's offer to purchase the Debtor's assets can be summarized[2] as follows:

A.     Buyer is acquiring, pursuant to Sections 363, 1123(a)(5)(D), and 1129 of the Bankruptcy Code, substantially all of the assets, tangible and intangible, of the Debtor, including the Avoidance Actions, specifically identified in the Stalking Horse APA (the "<u>Acquired Assets</u>"); provided, however, the  Buyer is not purchasing the Debtor's cash or the cash surrender value or death benefits of any life insurance policies owned by the Debtor, among other things (as defined in the Stalking Horse APA, certain "<u>Excluded Assets</u>").  Buyer assumes no liabilities of the Debtor unless expressly assumed pursuant to the Stalking Horse APA.

B.     **Consideration**.  The aggregate consideration for the Acquired Assets, to be purchased is $4,500,000.[3]  Buyer is purchasing the Acquired Assets free and clear of

---

[2] The following is intended to be a summary of the principal terms of the Stalking Horse APA; interested parties should review the Stalking Horse APA for a full recital of the relevant terms and conditions of the proposed Sale offer.

all liens, claims and encumbrances pursuant to Sections 105, 363, 1123(a)(5)(D), and 1129 of the Bankruptcy Code (the "Sale"), subject to typical closing prorations as set forth in the APA.

   C.  **Earnest Money Deposit**. Buyer has delivered $50,000 as an earnest money deposit (the "Initial Deposit"), and will deposit an additional $175,000 as an earnest money deposit by wire or cashier's check (the "Additional Deposit" and together with the Initial Deposit, the "Deposit") within five (5) business days of the signing of the Stalking Horse APA by Buyer, which Escrow will be held by Chicago Title Insurance Company as escrow agent. In the event Buyer is not the successful purchaser of the Acquired Assets, the Deposit shall be returned to the Buyer no later than five (5) business days following the consummation of the sale of the Acquired Assets.

   D.  **Stalking Horse Bidder/Break-Up Fee**. In the event Buyer is outbid by a third party that ultimately purchases substantially all of the Debtor's assets, Debtor shall pay to Buyer a break-up fee ("Break-Up Fee") equal to $150,000 within five (5) business days of the close of any sale transaction with a third party.

## Relief Requested

   10.  The Debtor seeks entry of the Sales Procedures Order, as that term is defined herein, in order to provide the Debtor's creditors who will be voting on the Plan with the specific procedures for the sale process which will take place either immediately after or simultaneous with confirmation of the Plan.

   11.  Section 105(a) of the Bankruptcy Code provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out

---

[3] As described in detail in the Stalking Horse APA, $100,000 of the Purchase Price will be deposited into an escrow account held at the Bank in order to address certain potential environmental liabilities.

provisions of this title." 11 U.S.C. § 105(a). Section 1123(a)(5)(D) of the Bankruptcy Code

provides, in relevant part that a plan shall provide for adequate means for the plan's

implementation, such as "sale of all or any part of the property of the estate, either subject to or

free and clear of any lien or the distribution of all or part of the property of the estate among

those having an interest in such property of the estate[.]" 11 U.S.C. §1123(a)(5)(D).

12. A copy of the proposed Sale Procedures to be appended to the Sale Procedures

Order is attached hereto as **Exhibit B**. The following summarizes[4] important provisions of the

Sale Procedures Order:[5]

A.    **Requirements for Participation in Auction; Qualified Bidders**:

(1)    Only Qualified Bidders (as defined below) may participate at the Auction
(as defined below).

(2)    For the purposes of the Sale Procedures Order, a "Qualified Bidder" is one
who submits a "Qualified Bid."

(3)    A "Qualified Bid" is an offer to purchase the Acquired Assets that adheres
to the requirements set forth below; no offer may be a Qualified Bid unless it complies with all
such requirements in full:

(A)  **Deadline for Submitting Qualified Bids**:  An entity that wishes to
submit a Qualified Bid must submit its bid so that it is actually received not
later than 5:00 p.m. (central) on May 29, 2018;

(B)  **Where to Submit Bids**:  Proposed Qualified Bids must be submitted to
the following parties via electronic mail and must include an electronic mail
address at which the entity submitting the same may be contacted:

**Debtor's Counsel**:
Scott R. Clar
David L. Kane
Crane, Simon, Clar & Dan

---

[4]  The following is intended to be a summary of the principal terms of the Sale Procedures Order; interested parties
should review the Sale Procedures Order for a full recital of the relevant terms and conditions of the proposed Sale
and Auction.

[5]  Capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Sale Procedures
Order.

135 S. LaSalle St., #3705
Chicago, IL 60603
(312) 641-6777
sclar@craneheyman.com
dkane@cranesimon.com

**Counsel for Associated Bank**:
Bryan E. Minier
Lathrop & Gage LLP
155 N. Wacker Dr., 30th Floor
Chicago, IL 60606-1758
(312) 920-3328
bminier@lathropgage.com

**Counsel for Official Unsecured Creditors' Committee**
Devon J. Eggert
Freeborn & Peters LLP
311 N. Wacker Dr., #300
Chicago, IL 60606
(312) 360-6305
deggert@freeborn.com

**Counsel for the Office of the United States Trustee**
Ha Nguyen
Office of the United States Trustee
219 S. Dearborn, #873
Chicago, IL 60604
(312) 886-3320
Ha.Nguyen@usdoj.gov

B.    **Content of Qualified Bid**:  All Qualified Bids:

(1)    must be in writing;

(2)    must be for all or substantially all of the Acquired Assets;

(3)    must propose a purchase price for the Acquired Assets that provides cash at closing, in immediately available funds, in a sum not less than $4.7 million, *plus* certain Cure Amounts and Assumed Liabilities, if any;

(4)    must include an executed asset purchase agreement, in the form of the Stalking Horse APA, containing, with the exception of the requirement of an increased purchase price, substantially all the terms and conditions contained in the Stalking Horse APA.  A proposed Qualified Bid may not include any provisions for a break-up fee, expense reimbursement, or similar payment.  A proposed Qualified Bid must also include a redlined or blacklined version of the

6

Stalking Horse APA, showing all changes made to the Stalking Horse APA by the party submitting the Qualified Bid;

(5)     must fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise participating in connection with the proposed Qualified Bid and the complete terms of any such participation, including as to any source of financing;

(6)     must be irrevocable until the closing of a sale of the Acquired Assets;

(7)     must state that the proposed Qualified Bidder agrees, if chosen as such, to be the Back-Up Bidder for the Acquired Assets for which it has bid and to close on such Back-Up at the highest offer it made at the Auction;

(8)     must not be contingent upon any conditions other than those specified in the final Stalking Horse APA, *provided, however*, that under no circumstances may the proposed Qualified Bid contain any financing or due diligence contingencies.

(9)     must (a) represent that the proposed Qualified Bidder is financially capable of consummating its proposed transaction, and (b) include information sufficient to establish to the satisfaction of the Debtor that the proposed Qualified Bidder is capable of doing so, which information shall include detail regarding the source(s) of funds that will be sued to consummate the transaction and may, in addition, include bank statements, current financial statements, or other proof of available liquid assets or available financing sufficient to consummate the transactions proposed in the Qualified Bid.

(10)    must (a) identify any executory contracts and/or unexpired leases of the Debtor that the proposed Qualified Bidder wishes to have assumed by the Debtor and assigned to it; (b) provide that it will pay the Cure Costs associated with such assumption, if any, in addition to the proposed purchase price; and (c) provide evidence establishing such proposed future performance (within the meaning of section 365(b) of the Bankruptcy Code) under any executory contracts or unexpired leases such proposed Qualified Bidder proposes to have assigned to it;

(11)    must contain written evidence that the proposed Qualified Bidder has obtained all necessary corporate, limited liability company, or similar authority including all internal consents, necessary for it to close and fund the proposed transaction; and

(12)    must be accompanied by an all-cash deposit (the "<u>Bid Deposit</u>") equal to 10% of the proposed purchase price (provided that the Buyer shall be exempt from this requirement).

C.    **Buyer as Qualified Bidder**.  Buyer is deemed to be a Qualified Bidder with respect to the bid represented by the final Stalking Horse APA.  The Buyer may but is not required to participate in the Auction (as defined below).

D.    **Designation of Qualified Bids**:

(1)    On or before May 30, 2018, the Debtor, after consultation with the Committee and the Bank, shall designate those submitted bids, if any, that are Qualified Bids; *provided however*, that the Debtor, after consultation with the Committee and the Bank, may determine at the Auction, that a previously Qualified Bidder has altered its bid in a way that causes it no longer to be a Qualified Bidder absent the provision of further assurances (*e.g.*, due to an increase in the proposed purchase price that is not supported by the previously submitted proof of financial resources; additional closing conditions, etc.); *provided, further* that the Buyer's bid, if materially unchanged from the represented by the final Stalking Horse APA, shall not be subject to disqualification.

(2)    On or before May 30, 2018, the Debtor shall notify each entity that has submitted a Qualified Bid, by electronic mail only, that its bid has been designated as a Qualified Bid.

(3)    If no Qualified Bids other than the Qualified Bid of the Buyer are received by the Qualified Bid Deadline, the Auction will not be held and the Debtor shall seek Court approval of a sale of the Assets to the Buyer.

E.    **Auction**:

(1)    If two or more Qualified Bids (including the Qualified Bid of the Buyer) are received for the Acquired Assets, an auction (the "Auction") will be conducted at the offices of Crane, Simon, Clar & Dan, 135 S. LaSalle, Suite 3705, Chicago, Illinois 60603, at 11:00 a.m. on May 31, 2018.

(2)    Attendance at the Auction shall be limited to representatives of the Debtor, the Committee, the Bank, Qualified Bidders, and the U.S. Trustee.

(3)    All bids submitted at the Auction shall be in increments of no less than $10,000.

(4)    The Debtor, in its sole discretion, after consultation with the Committee and the Bank, may announce at the Auction additional rules for bidding and other procedures for conducting the Auction, so long as such rules and procedures do not directly conflict with the provisions of this Sale Procedures Order, the Stalking Horse APA, any order of the Court entered in connection herewith, or the Bankruptcy Code.

F.    **Approval of the Sale**:  The Debtor shall seek the entry of an order from the Bankruptcy Court approving the sale of the Acquired Assets on June 5, 2018 at 10:00 a.m., or such other date as the Bankruptcy Court may determine.

G.      **Discretion of the Debtor Regarding Sale of Acquired Assets**:  The Debtor, after consultation with the Committee and the Bank, may reject any bid, other that the bid of the Buyer, that it deems inadequate or insufficient or that is not in compliance with the Sale Procedures Order of the Bankruptcy Code.  Further, the Debtor may extend or modify any of the deadlines set forth in its sole discretion.

13.      The Sale Procedures Order is the result of good faith, arm's length negotiations between the Debtor and the Buyer.  By providing for an Auction among Qualified Bidders, the Sale Procedures Order will promote competitive bidding for the Acquired Assets, thereby establishing the value that sophisticated industry participants place on the Acquired Assets.  By limiting participation at the Auction to Qualified Bidders and expressly delineating the requirements for being designated as a Qualified Bidder – including the requirement that any Qualified Bid be accompanied by an all-cash deposit and include additional cash consideration in the amount of the Break-Up Fee plus an additional increment – establishing overbid requirements for the Auction, the Sale Procedures Order will discourage bidding by parties other than those with the financial capacity to close a Sale and will ensure that the estate will have the cash to pay the Break-Up Fee if it becomes due.

14.      The terms of the Sale Procedures Order provide meaningful incentives for Buyer to continue investing the resources necessary to finalize and close the Sale, even as its offer is exposed to a competitive bidding process, with the associated risk to Buyer that the Buyer will not ultimately be the purchaser of the Acquired Assets.

**Break-Up Fee**

15.      The Sale Procedures Order provides that Buyer shall be entitled to receive a Break-Up Fee in the amount of $150,000, but only upon the terms and conditions set forth in the Sale Procedures Order.  The Break-Up Fee will become payable in the event of the termination

of the Stalking Horse APA  because Buyer is not selected as the Successful Bidder and an alternate purchaser closes a Sale of the Acquired Assets.

16.      The Debtor asks that the Break-Up Fee be paid as provided in the Sale Procedures Order and constitute an allowed administrative expense of the Debtor's estate pursuant to Sections 506(b) and 507(a)(2) of the Bankruptcy Code.

17.      A break-up fee can provide value to an estate by serving as an "incentive payment" offered to a bidder who places a debtor's property in a "sales configuration mode," attracts other bidders to an auction for the property, but is not the successful bidder at that auction.  *In re Financial News Network, Inc.,* 91B-10891, 1991 WL 127524, at *1 (Bankr. S.D.N.Y. May 10, 1991), aff'd, 135 B.R. 737 (S.D.N.Y. 1991).  Specifically, break-up fees can be appropriate devised where they (a) attract or retain a potentially successful bid, (b) establish a bid standard or minimum for other bidders to follow, and (c) attract additional bidders. *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.* (*In re Integrated Resources, Inc.*) 147 B.R. 650, 661-62 (S.D.N.Y. 1992).

18.      The Stalking Horse APA will commit the Buyer to consummate a Sale, thereby ensuring that the Debtor's estate will have Sale proceeds to distribute pursuant to the Plan.  The Stalking Horse APA will also establish a floor price for the Acquired Assets.

19.      The Break-Up Fee is intended to compensate Buyer for its opportunity costs, as well as its out-of-pocket expenses, incurred in connection with pursuing the Sale.  The Break-Up Fee is not disproportionate to the value of the entire proposed Stalking Horse APA transaction. *See e.g. In re Global Crossing Ltd.*, 295 B.R. 726, 733 (Bankr. S.D.N.Y. 2003) (observing that a "liquidating damages" provision functioned substantially like a break-up fee, court noted approval of break-up fee of $30 million on $250,000,000 transaction, or 12%); *In re 995 Fifth*

10

*Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. (1989) (break-up fees are generally permissible when reasonable in relation to bidder's efforts and size of transaction).

**Bid Protections**

20.     In addition to the Break-Up Fee, to induce Buyer to act as a stalking –horse bidder and thereby set a floor price for the Acquired Assets, the Debtor has agreed to incorporation of certain bid protections into the Sale Procedures Order. The bid protections include a requirement that any competing bid submitted by a bidder other than Buyer for consideration as a Qualified Bid for the Acquired Assets must provide for a purchase price of at least $4,700,000, representing the Purchase Price <u>plus</u> $200,000.  Any subsequent competing bid for the Acquired Assets must be for not less than cash equal to the sum of $10,000 above the immediately prior bid.

21.     The provision of the Break-Up Fee and the described bid protections to Buyer enhance the Debtor's ability to achieve a sale to a contractually committed bidder at a price the Debtor believes to be fair, while simultaneously providing the Debtor's estate with the potential of even greater benefit through higher bids.

22.     For these reasons, the Debtor requests that the Court approve the Break-Up Fee and bid protections for the Buyer as set forth in the Stalking Horse APA and enter the Sale Procedures Order.

**Approval of Sale After the Auction**

23.     On or about June 5, 2018, the Debtor will seek the entry of an order approving the Sale of the Acquired Assets to the party that submits the highest or otherwise best offer at the Auction.

## NOTICE AND SERVICE

24.    This Sale Procedures Motion has been filed electronically and will be served on the date hereof via the Court's CM/ECF System upon the following parties: (a) counsel for the Committee; (b) counsel for the Bank; (c) counsel for the Buyer; (d) counsel for the U.S. Trustee; and (e) all parties who have requested service through the Court's CM/ECF System.

25.    In addition, once the Sale Procedures Order has been entered, the Debtor will serve a copy of the Sale Procedures Order and Notice of Sale attached hereto as **Exhibit C** upon (a) all parties that have previously executed a non-disclosure agreement or expressed an interest in purchasing the Debtor's assets and (b) all creditors and parties in interest pursuant to Bankruptcy Rule 2002(a)(2).

## CONCLUSION

26.    The Debtor submits that a sale of the Debtor's assets represents the best path to concluding this Chapter 11 case.  Accordingly, the Debtor respectfully requests that the Court approve the Sale Procedures set forth herein, approve the Stalking Horse APA, approve the Break-Up Fee, and grant such other and further relief as the Court deems just and proper.


Dated: May 3, 2018                    ANDERSON SHUMAKER COMPANY, an
                                      Illinois corporation, debtor/debtor-in-
                                      possession

                                      By: /s/ *Scott R. Clar*
                                            One of Its Attorneys

**DEBTOR'S COUNSEL**:
Scott R. Clar (Atty. No. 06183741)
David L. Kane (Atty. No. 6277758)
Crane, Simon, Clar & Dan
135 S. LaSalle St., #3705
Chicago, IL 60603
(312) 641-6777
sclar@craneheyman.com
dkane@cranesimon.com

12